[Cite as *State v. Blount*, 2019-Ohio-3498.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180296 |
| | | TRIAL NO. 18TRD-8475 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| KEILOW BLOUNT, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 30, 2019

*Paula Boggs Muething,* City Solicitor, *Natalia Harris*, City Prosecutor, and *Ashley Melson*, Assistant City Prosecutor for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    This appeal stems from plaintiff-appellant Keilow Blount's conviction following a bench trial for driving under OVI suspension in violation of R.C. 4510.14(A).    He was sentenced to 180 days suspended, a one-year driving suspension, and a $250 fine.   In his sole assignment of error, Blount contends that his conviction was contrary to the manifest weight of the evidence.   Because we determine that the trial court was correct in its finding of guilt, we affirm.

### *Factual Background and Procedural Posture*

{¶2}    On March 4, 2018, at approximately 4:45 a.m., Cincinnati Police Officer Rocky Helton was dispatched to Rally's on Spring Grove Avenue in Cincinnati for the report of a person who was unconscious or asleep in a vehicle located in the drive-through lane of the Rally's parking lot.   Upon his arrival, Helton observed Keilow Blount asleep in the driver's seat of a vehicle parked in front of the speaker in the Rally's drive-through lane.   The engine was running, the headlights were on, and the door was locked.   No one else was in the vehicle.   When emergency medical technicians ("EMTs") arrived on the scene, they began trying to wake Blount.   The driver's side window was halfway down so one of the EMTs reached in and unlocked the driver's door.   After some prodding by the EMT and Helton, Blount awoke. Blount stated that he was just getting something to eat and then going home. Through investigation, Helton learned that the vehicle was registered to Blount, and that Blount's driver's license was OVI-suspended.   Helton also observed that Rally's appeared to be closed, and that no one was around.   At trial, Helton testified that the Rally's lot was private property.

{¶3}    Blount and his two friends, Charee Morris and Mark Adams, testified at trial in Blount's defense.  They testified that on the morning in question, they had been spending time together at Blount's house when they decided to go to Rally's.  Morris was the only one of the three with a valid driver's license, so she drove them in Blount's car.  Neither Morris nor Adams recalled what time they went to Rally's.  Blount testified it was around 1:00 a.m. or 1:30 a.m.  On the way to Rally's, Morris and Adams began fighting.  Once they were stopped in the drive-through lane, Morris put the vehicle in park, and she and Adams got out and continued to fight, walking away from Rally's.  Morris said that they had walked off under an underpass, while Adams said that they had walked down the street.  Neither Morris nor Adams recalled where in the drive-through lane they had left the vehicle.  Morris testified that she and Adams had been gone for a while and were coming back when she saw Blount with the police, and that Blount's vehicle had still been where she left it.  Rather than go to Blount to assist him or explain the situation, Morris and Adams instead decided to go home.  Morris testified that she does not trust the police and did not want to approach them.  Morris and Adams testified differently as to how they had gotten home.  Morris was adamant that they both had walked to the BP gas station and called a ride together, while Adams said he had taken a bus home alone.

{¶4}    Blount denied ever moving the vehicle.  He testified that he had moved from the passenger seat to the driver's seat after Morris and Adams disappeared in order to raise the window and lock the doors, as it was a rough part of town.  However, Helton's testimony and his body-camera video revealed that the driver's side window was half way down.  Blount testified that the vehicle had already been in park and running.  While he waited for Morris and Adams to return, he called a few

3

people to come pick him up without success and then fell asleep. Blount testified that he had not tried to call Morris and Adams. Blount stipulated that his driver's license had been OVI-suspended.

{¶5} At trial, Blount's counsel moved for dismissal under Crim.R. 29 at the conclusion of the state's case and again at the conclusion of the trial based on the lack of evidence that defendant was operating the vehicle, arguing that there was no testimony that he had operated a vehicle upon a public road or highway. The trial court overruled the motions, ultimately finding the defense witnesses lacked credibility because there were major discrepancies in each of their versions of the events. Specifically, the court noted that Blount's statement to Helton that he was getting food and then going home did not dispel the circumstantial evidence that he had operated the vehicle. The court found the circumstantial evidence more compelling—Blount was the registered owner of the vehicle, he was in the driver's seat with the key in the ignition and the engine running while parked in the drive-through lane of Rally's, and he said, "I'm getting food and going home." Blount never mentioned Morris or Adams or that he was stranded and waiting for a driver or a ride when he was talking to Helton. The court, upon pronouncing judgment stated, "I am firmly convinced that the defendant was driving the vehicle upon a public highway to get to the Rally's and that he was under suspension for OVI."

### Law and Analysis

{¶6} Blount's sole assignment of error is that his conviction for driving under OVI suspension is contrary to the manifest weight of the evidence because the evidence did not demonstrate that he had moved the vehicle prior to it being parked

4

in the private lot. To reverse a conviction on manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶7} The evidence in the record is that the Rally's lot was private property. Blount was convicted for driving under OVI suspension, in violation of R.C. 4510.14(A) which provides, "No person whose driver's license * * * has been suspended under section 4511.19, 4511.191, or 4511.196 of the Revised Code * * * shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension." The definition of public roads and highways, "for vehicles includes all public thoroughfares, bridges, and culverts." R.C. 4501.01(AA). Thus, as found by the trial court, the issue is whether Blount operated the vehicle on the public roads or highways before arriving in the Rally's drive-through.

{¶8} As an initial matter, the state refers in its brief to the statutory definition of operate under R.C. 4511.01(HHH),[1] but there is also a judicial definition

---

[1] R.C. 4511.01(HHH) defines "operate" as "means to cause or have caused movement of a vehicle, streetcar, or trackless trolley."

of operate[2] that may apply to driving-under-suspended-license cases. The preamble to R.C. 4511.01 states, "As used in this chapter and in Chapter 4513 of the Revised Code." Because Blount's charge is driving under OVI suspension, located in R.C. Chapter 4510, the R.C. 4511.01(HHH) definition of operate may not apply. *See, e.g., State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 22 ("In [*State v.*] *Cochran*, [2d Dist. Montgomery No. 22240, 2008-Ohio-3612,] the Second Appellate District stated it was not bound by the definition of operate in R.C. 4511.01(HHH) because the defendant had not been convicted of an offense under R.C. Chapter 4511.") Nevertheless, for the purposes of Blount's case, we do not need to resolve which definition of operate applies, because under either definition the state presented circumstantial evidence that Blount had operated the vehicle on the public roads or highways before arriving in the private driveway.

{¶9} Blount argues that while circumstantial evidence is given the same weight as direct evidence, any circumstantial evidence of operation was outweighed by the testimony of the defense witnesses in this case. However, the trial court found that the defense witnesses lacked credibility because of discrepancies in their varying accounts of events, and we do not find it clearly lost its way in doing so. Because the trier of fact is in a better position to observe the witnesses' demeanor and to weigh their credibility, the weight of the evidence and the credibility of the witnesses are

---

[2] The term "operate" is a broader term than driving. It includes not only a person being in control of a vehicle while in motion, but also a person, whether conscious or unconscious, in the driver's location in the front seat of a stationary vehicle so as to be capable of doing any act or series of acts which could cause or contribute to the vehicle being put in motion. It is not necessary to prove that the person in the driver's location of a stationary vehicle ever had the vehicle in motion or intended to put the vehicle in motion. *Ohio Jury Instructions* CR Section 710.11(A) (Rev. Jan. 23, 2010); *State v. Gill*, 70 Ohio St.3d 150, 152, 153, 637 N.E.2d 897 (1994); *State v. McGlone*, 59 Ohio St.3d 122, 123, 124, 570 N.E.2d 1115 (1991); *State v. Cleary*, 22 Ohio St.3d 198, 490 N.E.2d 574 (1986), syllabus.

primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶10} The trial court relied on circumstantial evidence and Blount's statements to Helton when it found Blount had, while his license was suspended for OVI, operated his vehicle on the public roads and highways to get to the Rally's drive-through. And in this case, the circumstantial evidence was overwhelming. Blount was alone in the driver's seat of a vehicle registered to him, with the key in the ignition, the engine running, and the headlights on, in the drive-through lane and sound asleep. The only statement Blount made to the responding officer that night was that he was getting food and going home. No one else was in the area. He did not mention that someone else had driven him there and abandoned him. *See Cochran,* 2d Dist. Montgomery No. 22240, 2008-Ohio-3612, at ¶ 25, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus ("Those facts are circumstantial evidence that the accused operated the vehicle to bring it to the place where it was found, and circumstantial and direct evidence inherently possess the same probative value.") It is well established that the state does not have to present direct evidence of a crime in order to sustain a conviction. *State v. Williams*, 2016-Ohio-5827, 71 N.E.3d 592 ¶ 67 (1st Dist.), citing *Jenks,* at paragraph one of the syllabus.

{¶11} Under these facts, the trial court, as the trier of fact, did not clearly lose its way and create a manifest miscarriage of justice in finding Blount guilty of driving under OVI suspension. For the foregoing reasons, Blount's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

ZAYAS, **P.J.**, and WINKLER, **J.,** concur.

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.