[Cite as *State v. Wilson*, 2020-Ohio-1584.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


STATE OF OHIO,     :   APPEAL NO. C-190281
                TRIAL NO. 19TRD-6288
  Plaintiff-Appellee,   :

                *O P I N I O N.*

 vs.          :

KATHERINE WILSON,    :

  Defendant-Appellant.  :


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  April 22, 2020


*Paula Boggs Muething*, City Solicitor, *William T. Horsley*, Interim City Prosecutor, and *Jon Vogt*, Appellate Director, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} After a night of partying, defendant-appellant Katherine Wilson and her friends were kicked out of the house early in the morning by parents who were less than pleased with the festivities. They stumbled across the street and decided to "sleep it off" in a car parked across from the house. Ms. Wilson made herself at home in the driver's seat, and when a police officer interrupted their slumber to see what was going on, he discovered that she had a suspended license and cited her for "operating" a vehicle with a suspended license. The state concedes that Ms. Wilson did not actually drive the car anywhere, and thus this case boils down to whether the term "operating" requires actual physical movement of the car. Consistent with the structure of the relevant statute and recent interpretative guidance from the General Assembly, we conclude that it does. We therefore find that the state failed to produce sufficient evidence that Ms. Wilson improperly operated a vehicle, and we reverse her conviction.

I.

{¶2} On a brisk February morning, Officer Charles Hains responded to a call placed at 5:30 a.m. by a concerned neighbor who spotted a vehicle crowded with young people parked on a residential street. Arriving three hours later, at roughly 8:30, Officer Hains identified the reported vehicle and approached, finding four individuals fast asleep inside the running car, with Ms. Wilson at the helm of the driver's seat. Promptly waking everyone up, Officer Hains soon uncovered the reason for their sleeping in the car. One of the individuals lived in the house right across the street and, upon the parent tossing the group out, the foursome sought refuge in the car to sleep (sleep it off, really). Continuing

his investigation, Officer Hains also discovered Ms. Wilson was currently under a driving suspension, and thus he cited her for driving under an OVI suspension.

{¶3} At trial, neither the state nor Ms. Wilson disputed the events of that February morning. Instead, the trial hinged on the meaning of the term "operate" for purposes of R.C. 4510.14(A), driving under an OVI suspension. The state championed the judicial interpretation of "operate," requiring evidence of either actual or potential movement of the vehicle. To satisfy this judicial definition, the state offered testimony from Officer Hains, who recounted the events above, emphasizing that Ms. Wilson was sleeping in the driver's seat, the key in the ignition, and the engine running. On the other hand, Ms. Wilson requested the court adopt the statutory definition set forth in R.C. 4511.01, necessitating evidence that she cause or had caused movement of the vehicle. Moving for a Crim.R. 29 acquittal, Ms. Wilson asserted that, because the state offered no evidence that the car actually moved (a point the state eventually concedes), it failed to establish that she operated the vehicle, a necessary element under R.C. 4510.14(A).

{¶4} Ultimately, the court sided with the state, maintaining that "as the Supreme Court has indicated, operation is more than actually driving," it is "having the ability to move the vehicle," and accordingly denied her Crim.R. 29 motion and convicted her of driving under an OVI suspension.[1] Ms. Wilson now appeals, challenging in her sole assignment of error the sufficiency of the evidence supporting her conviction.

---

[1] We note that the court's entry below mistakenly stated that Ms. Wilson was guilty of violating R.C. 4510.16. However, as is clear from the record, the court granted the state's request under Crim.R. 7 to amend the ticket to reflect only the violation of R.C. 4510.14 and the bench trial proceeded on the R.C. 4510.14 violation alone. *See State v. Lattimore*, 1st Dist. Hamilton No. C-010488, 2002 WL 252451, *2 (Feb. 22, 2002) ("The trial court's citation to the incorrect Revised Code section was a clerical mistake * * * Crim.R. 36 allows for the correction at any time of clerical mistakes and errors due to oversight or omission by the court."). In this case, we need not remand for the trial court to correct this clerical mistake since we ultimately reverse the court's judgment and discharge the appellant.

3

II.

A.

{¶5} Generally, when reviewing the sufficiency of the evidence, we inquire whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all the necessary elements of the crime beyond a reasonable doubt. *See State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 10, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. But in this case, since neither side disputes the facts, we confront a pure issue of statutory interpretation, warranting de novo review. *See State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 20 ("Interpretation of a statute is a question of law that we review de novo.").

{¶6} Pursuant to R.C. 4510.14(A), "[n]o person whose driver's * * * license * * * has been suspended under section 4511.19 * * * shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension." The outcome of this case turns on what the term "operate" means as used in R.C. 4510.14(A), given that no statutory definition appears in the operative section.

{¶7} The parties essentially frame the debate as a choice between a statutory definition of "operate" from another section of the Revised Code—R.C. 4511.01(HHH)—or a prior judicial interpretation of the term from our Supreme Court. Ultimately, we view the judicial interpretation as superseded by subsequent legislative action and, regardless, not directed at the statute that we must interpret in this case. But to give context to these dueling positions, we must step back and set the stage a bit.

4

{¶8} Prior to the enactment of Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2951, R.C. 4511.19(A)(1)(a)—operating a motor vehicle while under the influence—required the defendant operate the vehicle, but, similar to R.C. 4510.14, it failed to define "operate." *See State v. Schultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, ¶ 18 ("Before the General Assembly enacted S.B. 123, effective January 1, 2004, there was no statutory definition of 'operate.' "). In absence of a statutory definition, the Ohio Supreme Court, in *State v. Cleary*, 22 Ohio St.3d 198, 490 N.E.2d 574 (1986), established that "[o]peration of a motor vehicle within the contemplation of the statute is a broader term than mere driving," and in fact "a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence" sufficed for purposes of R.C. 4511.19(A)(1). *Id.* at 199.

{¶9} A few years later, in *State v. Gill*, 70 Ohio St.3d 150, 637 N.E.2d 897 (1994), the Ohio Supreme Court built upon its holding in *Cleary*. Distinguishing themselves from *Cleary*, the defendants in *Gill* emphasized that, while positioned in the driver's seat with the key in the ignition, the engine was not running, and thus this critical difference prohibited the court from finding a R.C. 4511.19 violation. *Id.* at 153-154. Yet the court refused to bite at this distinction, clarifying that *Cleary* was "intended to establish that if a person is found intoxicated in the driver's seat of a parked vehicle with the ignition key in the ignition" the person operates a vehicle for purposes of R.C. 4511.19, "whether or not the engine of the vehicle is running." *Id.* at 154. In rejecting the defendants' proposal, the court maintained that the purpose of R.C. 4511.19 is "to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence[.]" *Id.* In other words, R.C. 4511.19 also carries a

prospective purpose in eliminating the "potentially harmful conduct" that could result when a person sits in the driver's seat with even the ability to control the vehicle in an intoxicated state. *Id.*; *see State v. Wright*, 137 Ohio App.3d 88, 91, 738 N.E.2d 61 (11th Dist.2000) ("Implicit in the court's reasoning is an acknowledgment that a person who is intoxicated and seated in the driver's seat with the key in the ignition need do little more than turn the key in order to set the vehicle in motion."). Justice Pfeifer dissented, criticizing this expansive construction of "operate": "The legislature's intent was to deter and to punish drunk drivers, not to punish drunk radio listeners, or people who use their cars as a four-wheeled, heated hotel room." *Gill* at 157-158 (Pfeifer, J., dissenting).

{¶10} Taking a cue from Justice Pfeifer, the General Assembly had misgivings about the breadth of the judicial definition of operate, and thus it interceded. Effective January 1, 2004, it defined the term "operate" as used in R.C. Chapter 4511, as "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). Ohio courts agree that the legislative purpose at hand was to overrule the judicial definition espoused by *Gill* and *Cleary*, and to narrow the definition of "operate." *See State v. Anthony*, 2016-Ohio-2905, 64 N.E.3d 591, ¶ 20 (5th Dist.), quoting *State v. Barnard*, 5th Dist. Stark No. 2010-CA-00082, 2010-Ohio-5345, ¶ 25 (" 'This modification narrows the definition of "operate[.]" ' "); *State v. Wallace*, 166 Ohio App.3d 845, 2006-Ohio-2477, 853 N.E.2d 704, ¶ 11 (1st Dist.) ("But in Sub.S.B. No. 123, the General Assembly modified the definition in *Gill* and its predecessors by specifically defining 'operate,' as well as by adding the words 'at the time of the operation' to R.C. 4511.19(A)(1)."). Indeed, the Second District in *State v. Cochran*, 2d Dist. Montgomery No. 22240, 2008-Ohio-3612—a case the state urges us to follow—recognized that R.C. 4511.01(HHH) "supersedes the prior judicial definition of 'operate' in *State v. Gill*[.]" *Id.* at

¶ 25. At the same time, the General Assembly created a new offense (seeming to encompass Justice Pfeifer's scenarios), "having physical control of a vehicle while under the influence" under R.C. 4511.194(B); defining "physical control" as "being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device." R.C. 4511.194(A)(2).

{¶11} The state says that this history is all well and good, but largely beside the point because the statutory definition in R.C. 4511.01(HHH) does not apply to driving under OVI suspension cases, but instead is limited by its preamble to only R.C. Chapters 4511 and 4513. *See* R.C. 4511.01 ("As used in this chapter and in Chapter 4513. of the Revised Code[.]"). The state is correct on this score, but its position backs into another problem— *Gill* and *Cleary* were also not interpreting the driving under OVI suspension statutory provisions. Nor has our court ever extended the interpretation in that pair of cases to R.C. 4510.14(A), the section at hand in this case. To be sure, in *State v. Blount*, 1st Dist. Hamilton No. C-180296, 2019-Ohio-3498, this court noted that the judicial definition of "operate" may apply to driving under suspended license cases, but we did not answer the question because the facts in that case showed that the individual had actually driven the car. *Id.* at ¶ 8 ("[T]here is also a judicial definition of operate that may apply to driving-under-suspended-license cases."). Now, however, we must provide an answer given the undisputed facts in this case. *Id.* ("Nevertheless, for the purposes of [the defendant's] case, we do not need to resolve which definition of operate applies, because under either definition the state presented circumstantial evidence that [the defendant] had operated the vehicle on the public roads or highways before arriving in the private driveway.").

{¶12} As always, the goal of statutory construction is to ascertain and effectuate the intent of the General Assembly. *See State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. Generally, we need not look to the canons of statutory construction unless the statutory language is ambiguous. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22 ("When statutory language is ambiguous, the rules of statutory interpretation must be applied to determine the intent of the legislature."); *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 18, quoting *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12 (" '[I]f the words [are] free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation.' "). Ambiguity exists " 'if a reasonable person can find different meanings in the [statute] and if good arguments can be made for either of two *contrary* positions.' " (Emphasis sic.) *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, 99 N.E.3d 354, ¶ 12, quoting *Sunset Estate Properties, L.L.C. v. Village of Lodi*, 9th Dist. Medina No. 12CA0023-M, 2013-Ohio-4973, ¶ 20; *see Rockies Express Pipeline, L.L.C. v. McClain*, Slip Opinion No. 2020-Ohio-410, ¶ 15 ("A statute is ambiguous only if its language is susceptible of more than one reasonable interpretation."). Such ambiguity exists here, with both parties providing different, but reasonable, interpretations of the undefined term "operate." *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 14 ("To see the statutory ambiguity, one need look no further than the fact that both [parties] offer reasonable and conflicting interpretations of the statute."). On the one hand, it is reasonable to read, as Ms. Wilson does, "operate" to necessitate movement of the vehicle,

especially when this interpretation coincides with a statutory definition just a chapter away in R.C. Chapter 4511. Yet, the state's interpretation of "operate" (echoed by the dissent) is also reasonable in light of prior Ohio Supreme Court authority (applying to R.C. 4511.19). And thus, in order to resolve this ambiguity, we rely on three basic principles: (1) the structure and accompanying language within R.C. 4510.14, (2) the doctrine of in pari materia, and (3) the purposes animating *Gill* and *Cleary*.

B.

{¶13} We first consider how the General Assembly employed "operate" in R.C. 4510.14. Importantly, in doing so, we should not review the General Assembly's use of "operate" within R.C. 4510.14 in a vacuum, but instead direct our attention " 'beyond single phrases,' " considering " 'in proper context, all words used by the General Assembly in drafting [R.C. 4510.14][.]' " *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 5, quoting *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 95 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. Accordingly, all words or phrases within R.C. 4510.14 impact our analysis, prohibiting us from "pick[ing] out one sentence and disassociat[ing] it from the context" and instead demanding we "look to the four corners of the enactment to determine the intent of the enacting body." *Electronic Classroom of Tomorrow v. Ohio Dept. of Ed.*, 154 Ohio St.3d 584, 2018-Ohio-3126, 118 N.E.3d 907, ¶ 11; *see D.A.B.E., Inc.* at ¶ 19 ("We must presume that in enacting a statute, the General Assembly intended for the entire statute to be effective. * * * Thus, all words should have effect and no part should be disregarded.").

{¶14} Turning to R.C. 4510.14, the statute first delineates the elements of the offense, forbidding an individual from operating a motor vehicle if his or her license has

been suspended under certain sections of the code. *See* R.C. 4510.14(A). Immediately following, the General Assembly labels this violation: "[w]hoever violates this section is guilty of *driving* under OVI suspension." (Emphasis added.) R.C. 4510.14(B). Based on this language, the words utilized in the next sentence after "operate" allow for a reasonable inference that, to be found guilty, the offense necessitates driving of some sort. *See State v. Lamke*, 2013-Ohio-925, 988 N.E.2d 913, ¶ 23-24 (1st Dist.), quoting *D.A.B.E., Inc.* at ¶ 19 (reasoning that because the court must presume " 'the General Assembly intended for the entire statute to be effective,' " it must read R.C. 4511.195 divisions (D) and (F) together, instead of division (F) alone as the parties suggested, to conclude that R.C. 4511.195 provides the court with discretion in the event of an acquittal to charge expenses and fees to either the arrested person or specified governmental party). Indeed, it would be strange for someone to be found guilty of driving under an OVI suspension when they didn't drive at all. *See Coleman v. Progressive Preferred Ins. Co.*, 1st Dist. Hamilton No. C-070779, 2008-Ohio-3568, ¶ 15 ("[W]e should interpret statutes to prevent an absurd result."); *State ex rel. Haines v. Rhodes*, 168 Ohio St. 165, 151 N.E.2d 716 (1958), paragraph two of the syllabus ("The General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, and, if reasonably possible to do so, statutes must be construed so as to prevent such results.").

{¶15} Wandering further down the page of R.C. 4510.14 shows that the General Assembly invoked "driving" and "operate" synonymously. After R.C. 4510.14(B), the statute employs the phrase "driving under OVI suspension" three more times in R.C. 4510.14(B)(1)-(3). Similarly, the statute reiterates the term "operate," noting for sentencing purposes that "[if] the vehicle the offender was operating at the time of the offense is registered in the

offender's name," certain repercussions follow. *See* R.C. 4510.14(B)(1)(d), (2)(d), (3)(d). This carries significance, as the legislature had the option to distinguish between "driving" and "operate," and yet it chose not to, instead seemingly employing them interchangeably throughout R.C. 4510.14. *See Ohio River Pipe Line LLC v. Henley*, 144 Ohio App.3d 703, 708, 761 N.E.2d 640 (5th Dist.2001) (reasoning that because the legislature failed to distinguish between the terms "oils" and "petroleum," instead using them "interchangeably" throughout R.C. Chapter 1723, "petroleum" for purposes of R.C. 1723.02 included both naturally occurring substances and petroleum by-products). Accordingly, both the basic structure of R.C. 4510.14 and its interchangeable use of "driving" and "operate" suggest that driving under an OVI suspension necessitates the offender actually drive the vehicle at some point.

C.

{¶16} Another statutory construction canon (in pari materia) reinforces this interpretation of the term "operate." *In re Application of Duke Energy Ohio, Inc.*, 150 Ohio St.3d 437, 2017-Ohio-5536, 82 N.E.3d 1148, ¶ 27 ("The in pari materia rule may be used to interpret a statute but only when some doubt or ambiguity exists."). Under this rule, " 'statutes relating to the same matter or subject, although passed at different times and making no reference to each other, are in pari materia and should be read together to ascertain and effectuate if possible the legislative intent,' " based on the assumption "that the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191-192, 404 N.E.2d 159 (1980), quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 466, 132

N.E.2d 191 (1956). Accordingly, while not controlling, we may consider R.C. 4511.01(HHH)'s definition of "operate" to lend guidance.

{¶17} And, we pause to note, we are not the first to do so. The Ohio Supreme Court itself turned to R.C. 4511.01(HHH) in *Doe v. Marlington Local School Dist. Bd. of Edn.,* 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, to shed light on the meaning of the undefined term "operation" in R.C. 2744.02(B)(1), an exception to immunity for negligent operation of a motor vehicle. After noting the purposes supporting the broad interpretation established in *Cleary* did not apply to R.C. 2744.02, the court turned to R.C. 4511.01(HHH)'s definition of "operate," citing *Meeks* in support. *Id.* at ¶ 22, 24 ("The definition of 'operate' in R.C. 4511.01 is also useful in gleaning the meaning of 'operation' in R.C. 2744.02(B)(1)."). From the court's perspective, this was a logical step since R.C. 2744.01(E) (R.C. Chapter 2744's section for definitions) already explicitly pointed to R.C. 4511.01 for the definition of "motor vehicle" in R.C. Chapter 2744. *Id.* at ¶ 24. Ultimately, the court interpreted "operation" consistent with R.C. 4511.01(HHH)'s definition, concluding that "the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved." *Id.* at ¶ 26.

{¶18} Similarly, the Eleventh District in *State v. Miranda*, 11th Dist. Lake No. 2014-L-020, 2014-Ohio-5312, considered R.C. 4511.01(HHH) when interpreting the undefined phrase "while operating" for purposes of aggravated vehicular assault under R.C. 2903.08(A)(1)(a). *Id.* at ¶ 22. Invoking in pari materia to do so, the Eleventh District noted R.C. 4511.01 was particularly relevant in its inquiry as "one of the elements of Aggravated Vehicular Assault is that the serious physical harm must be proximately caused by a

12

violation of R.C. 4511.19(A) [OVI], to which R.C. 4511.01(HHH) is applicable." *Id.* The Eleventh District ultimately found sufficient evidence existed for the defendant's aggravated vehicular assault since he was the proximate cause of "serious physical injury to another, i.e., he caused the harm while 'hav[ing] caused' the vehicle to move." *Id.* at ¶ 26.

{¶19} Likewise, it makes sense to read R.C. 4511.01(HHH) together with R.C. 4510.14 to divine the meaning of "operate" here. Both R.C. 4511.19, to which R.C. 4511.01(HHH) applies, and R.C. 4510.14 relate to operating a vehicle while under certain circumstances (i.e., under the influence of drugs or alcohol, on the one hand, or under an OVI suspension, on the other). *See Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 38 ("Statutes and regulations that relate to the same general subject matter may be read in pari materia in order to discover and carry out legislative intent."); *Meeks*, 62 Ohio St.2d at 192, 404 N.E.2d 159, quoting *Weygandt*, 164 Ohio St. at 466, 132 N.E.2d 191 (" '[S]tatutes relating to the same matter or subject * * * are in pari materia and should be read together[.]' "). Further, comparable to *Doe* and *Miranda*, R.C. 4510.14 expressly references R.C. Chapter 4511. *Doe* at ¶ 24 (R.C. 2744. 01(E) explicitly pointing to R.C. 4511.01 for the definition of "motor vehicle" in R.C. Chapter 2744); *Miranda* at ¶ 22 (R.C. 2903.08 designating the serious physical harm be proximately caused by a R.C. 4511.19 violation). Specifically, R.C. 4510.14(A) names R.C. 4511.19 as an element of driving under an OVI suspension, prohibiting the operation of a vehicle by a person whose driver's license "has been suspended under section 4511.19" (or another of the listed code sections).

{¶20} Additionally, R.C. 4511.01(HHH)'s definition—"to cause or have caused movement"—better comports with the natural understanding of "operate" than the prior judicial interpretation. *See State v. Odd*, 5th Dist. Stark No. 2006-CA-00336, 2007-Ohio-5813, ¶ 33 ("Since the meaning of 'operate a motor vehicle' to the average ordinary person is consistent with the definition found in R.C. 4511.01(HHH), we believe that definition is applicable to a violation of R.C. 2921.331 [failure to comply with order or signal of a police officer]."). And the legislative intent behind the 2004 modifications bolsters such a notion that "operate" no longer equates to simple physical control of the vehicle (fully consistent with the equating of "driving" and "operating" in R.C. 4510.14). As noted above, not only did the General Assembly define "operate," but it created a new offense, physical control under R.C. 4511.194. Essentially, these statutory modifications "eliminated 'drunk radio listeners, or people who use their cars as a four-wheeled, heated hotel room' from being convicted of OVI." *Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, at ¶ 15, quoting *Gill*, 70 Ohio St.3d at 157-158, 637 N.E.2d 897 (Pfeifer, J., dissenting). And thus, if officers found an individual sleeping in his or her vehicle on the side of the highway, he or she might be convicted of OVI because the trier of fact could infer that the vehicle necessarily moved to that location. But if the person decided to sleep in the parking lot of a bar or similar establishment, then a physical control violation is the only option, unless circumstantial evidence of movement exists. *See Schultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, at ¶ 25 ("[A] person who is found passed out in his vehicle on the side of the highway may be convicted of an OVI because a jury could infer that the vehicle was moved to that location. However, if a person decides to 'sleep it off' in the parking lot of the

bar where the person drank, the person could be convicted only of a physical control violation, unless there is evidence of movement.").

{¶21} Stated differently, this new physical control offense essentially codified portions of *Gill*'s judicial definition of "operate," defining "physical control" as " 'being in the driver's position of the front seat of a vehicle and having possession of the vehicle's ignition key or other ignition device.' " *Barnard*, 5th Dist. Stark No. 2010-CA-00082, 2010-Ohio-5345, at ¶ 27, quoting *Schultz* at ¶ 21; *see* R.C. 4511.194(A)(2); *Miranda*, 11th Dist. Lake No. 2014-L-020, 2014-Ohio-5312, at ¶ 25 ("For situations where a person had control but did not cause movement, the crime of Having Physical Control of a Vehicle While Under the Influence of Alcohol was created."). As a result, "operate" under R.C. 4511.01(HHH) encompasses only conduct that actually causes a vehicle to move. *See Miranda* at ¶ 25 ("R.C. 4511.01(HHH) was enacted to limit the sort of conduct circumscribed by operation of a motor vehicle to that conduct which actually causes a vehicle to move."); *Anderson* at ¶ 24-34 (detailing analysis of "operate" under R.C. 4511.01(HHH)).

D.

{¶22} Beyond the historical and context-based reasons, *Gill* and *Cleary* do not control for another reason—they premised their results on a purpose-driven analysis of R.C. 4511.19 that sheds no light on R.C. 4510.14 (the dissent references a "judicially-created definition of 'operate' found in R.C. 4510.14(A)," but of course the Supreme Court in this pair of cases did not interpret that statutory provision). Those cases lent a broad perspective to "operate" for purposes of OVI situations in an acknowledgment of the obvious dangers of an intoxicated person behind the wheel who could set the car in motion (perhaps even inadvertently). *See Cleary*, 22 Ohio St.3d at 201, 490 N.E.2d 574 ("A person

15

under the influence of alcohol or any drug of abuse behind the wheel of a motor vehicle is the obvious hazard at which the statute is directed whether the vehicle is stationary or in motion."). The simple act of putting a key in the ignition and running the engine directly related to the physical functioning of the car, carrying the potential for causing movement. Accordingly, the Ohio Supreme Court found a broad interpretation of operate encompassing these acts necessary to implement the statute's intended purpose, combatting the dangers of driving under the influence.

{¶23} But the same close relationship does not exist between driving a motor vehicle under the influence and driving under an OVI suspension, and the Supreme Court advised us to be mindful of this consideration in *Doe*. *See Doe*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 22 (declining to extend *Cleary*'s interpretation of "operate" to R.C. 2744.02(B)(1)'s exception to immunity for the negligent operation of a motor vehicle since the "same close relationship does not exist between driving a motor vehicle and supervising the conduct of the passengers in the motor vehicle."). R.C. 4510.14 does not attempt to combat the hazard of an intoxicated person behind the wheel. In fact, intoxication is not even an element of a driving under an OVI suspension offense, but instead R.C. 4510.14(A) necessitates a suspended license. *See State v. Owens*, 3d Dist. Allen Nos. 1-18-48 and 1-18-49, 2019-Ohio-440, ¶ 8 ("[T]he State must prove beyond a reasonable doubt that a defendant (1) operated (2) any motor vehicle (3) on a public road or highway (4) during the period of a license suspension[.]"). Consequently, the danger of a person driving under an OVI suspension (i.e., a person driving with a suspended license) does not occur until the vehicle is actually in motion (which comports with our context-driven discussion above). Moreover, since intoxication is not an element of the offense, no reason exists to presume

that the driver is impaired. Accordingly, the very hazard *Gill* and *Cleary* intended to prevent—i.e., an intoxicated person even potentially moving the vehicle—through a broad interpretation does not exist for purposes of R.C. 4510.14. Therefore, the policy-based assessment provided by the Supreme Court in *Doe* further militates against reliance on those decisions in this context.

{¶24} The state, however, urges us to follow the Second District's decision in *Cochran*, which seemingly reached a contrary result by indicating that "the definition of 'operate' in R.C. 4511.01(HHH) does not apply to or limit the violation of R.C. 4510.16(A) of which Defendant was convicted." *See Cochran*, 2d Dist. Montgomery No. 22240, 2008-Ohio-3612, at ¶ 26. However, the court's reliance on *Gill* seems at odds with its earlier recognition that R.C. 4511.01(HHH) superseded *Gill*, and in any event, the court's conclusion appears to be dicta. *See Dayton v. Ahmad*, 2d Dist. Montgomery No. 24165, 2011-Ohio-2302, ¶ 66 (Grady, P.J., concurring) (noting that the facts in *Cochran* "logically supported a conclusion that the defendant had operated the vehicle for purposes of R.C. 4511.01(HHH)."). We decline to follow the Second District's conclusion in light of those points and the facts that: (1) the court considered a different statutory section, R.C. 4510.16(A), and thus it had no occasion to analyze R.C. 4510.14(A); (2) the court did not consider the implications of in pari materia; and (3) the court did not analyze the purposes behind *Gill* and *Cleary* as compared to R.C. 4510.14(A). We also see no case, nor has the dissent presented one, clinging to the "judicial definition" of *Gill* and *Cleary* to hold someone criminally liable for "operating" a vehicle without actually setting it in motion since the General Assembly promulgated R.C. 4511.01(HHH).

{¶25} Accordingly, in interpreting R.C. 4510.14(A) in light of our discussion above, we hold that "operate" for purposes of driving under an OVI suspension necessitates evidence that the defendant cause or had caused movement of the vehicle. *See Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, at ¶ 16 ("In defining 'operate,' R.C. 4511.01(HHH) employs both the present tense ('to cause') and the past tense (to 'have caused') in relation to the movement of a vehicle. The past tense indicates an action already completed."). As always, this element may be proved by circumstantial or direct evidence. *Id.*

E.

{¶26} With this backdrop in mind, we turn to the case at hand, evaluating whether the state provided sufficient evidence to prove Ms. Wilson caused or had caused movement of the vehicle. On appeal, the state itself does not contend the vehicle moved, an appropriate concession in light of the lack of evidence on this point.

{¶27} At trial, Officer Hains recalled the events of that day, discovering Ms. Wilson sleeping in the parked vehicle with three others, positioned in the driver's seat, with the key in the ignition, and the engine running. However, absent from his testimony, were any "additional facts" illustrating an "inference of movement." *See Anderson* at ¶ 24. In fact, Officer Hains testified he did not recall any statements from Ms. Wilson concerning her moving the vehicle, nor did any other neighbor or witness testify to observing as much. *See Anderson* at ¶ 31 ("None of the firefighters and paramedics testified * * * that they had observed [the defendant] driving the vehicle."); *Cleveland v. Dumas*, 8th Dist. Cuyahoga No. 99558, 2013-Ohio-4600, ¶ 16 ("On this record, there was * * * no evidence that the defendant had driven the vehicle."). Further, the state offered no evidence that Ms. Wilson,

rather than one of the other three passengers, drove the vehicle to the residential home in the first place. Therefore, on the record before us, we cannot hold the state provided sufficient evidence Ms. Wilson operated the vehicle here.

III.

{¶28} Absent direct or circumstantial evidence that Ms. Wilson operated the vehicle, an essential element of a driving under an OVI suspension offense under R.C. 4510.14(A), no rational trier of fact could have found the state proved each element of the offense beyond a reasonable doubt. Accordingly, we sustain Ms. Wilson's sole assignment of error. We reverse the trial court's judgment and discharge Ms. Wilson from further prosecution.

Judgment reversed and appellant discharged.

ZAYAS, J., concurs.
MOCK, P.J., dissents.

MOCK, P.J., dissenting.

{¶29} In this case, we are asked to resolve a relatively simple question. Did the General Assembly intend to supersede the judicially-created definition of "operate" found in R.C. 4510.14(A) when it enacted R.C. 4511.01(HHH) with Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467 ("S.B. 123")? The majority has determined that it did. I disagree.

{¶30} Admittedly, while the question is simple, answering it is decidedly less so. We begin with the judicially-created definition. In 1986, the Ohio Supreme Court defined the word "operate" in the context of the OVI statute—R.C. 4511.19(A)(1). *See State v. Cleary*, 22 Ohio St.3d 198, 490 N.E.2d 574 (1986). In that case, the defendant was seated in the driver's seat of the vehicle while intoxicated, the engine was running, and his foot was on the accelerator. While the car was not in gear and the parking brake was engaged, the

19

engine was running at a high speed. The court concluded that the defendant had "entered the car, seated himself behind the wheel, put the key in the ignition and started and was racing the engine. We find appellant performed acts sufficient to constitute operation of the vehicle within the meaning of the statute." *Id.* at 201. The court reached this conclusion because "it clearly was not the intent of the legislature to encourage intoxicated persons with impaired faculties and very questionable judgment, and with the capability of putting the vehicle in motion, to climb behind the wheel and be in a position to put the motor vehicle in motion." *Id.* The court also said that "a person under the influence of alcohol or any drug of abuse behind the wheel of a motor vehicle is the obvious hazard at which the statute is directed whether the vehicle is stationary or in motion." *Id.*

{¶31} The *Cleary* definition of "operate" remained the law of Ohio for eight years until the court addressed the question again in *State v. Gill*, 70 Ohio St.3d 150, 637 N.E.2d 897 (1994). At that time, the court clarified its analysis of the question by articulating that the engine need not be running in order for a defendant to be found to have operated a motor vehicle. *Cleary* was "intended to establish that if a person is found intoxicated in the driver's seat of a parked vehicle with the ignition key in the ignition, the person is guilty of violating the statute." *Id.* at 154. The legislature need not create a statute that criminalizes only driving while intoxicated, because the "[p]rohibition of potentially harmful conduct need not await occurrence of the act." *Id.* Noting that "the gravity of the problem of driving while intoxicated is revealed by the number of needless tragic injuries and deaths that occur annually on the roadways in this state," *id.*, the court concluded that "A person who is in the driver's seat of a motor vehicle with the ignition key in the ignition and who, in his or her body has a prohibited concentration of alcohol, is 'operating' the vehicle within the meaning of R.C. 4511.19 whether or not the engine of the vehicle is running." *Id.* at syllabus.

{¶32}   Almost a decade later, the General Assembly enacted S.B. 123, effective January 1, 2004.  This legislation was a comprehensive overhaul of numerous aspects of motor vehicle law in Ohio, and this will be discussed in more detail below.  But I must begin with my first point of departure from the analysis of the majority.  Discussing the enactment of this legislation, the majority writes "Taking a cue from Justice Pfeifer [who had dissented in *Gill* on the basis that the definition the majority created was overbroad], the General Assembly had misgivings about the breadth of the judicial definition of operate, and thus it interceded."  This "intercession" occurred with the enactment of R.C. 4511.01(HHH), which defined the term "operate" to mean "to cause or have caused movement of the vehicle."

{¶33}   The initial problem with this analysis is that it assumes that the legislature was attempting to correct the definition in *Cleary/Gill*.  S.B. 123 was not enacted on the heals of the *Gill* decision, and there does not appear to be any reference to *Gill* in the legislative history of the enactment.  The legislation was enacted almost a decade after *Gill* was decided in 1994, and almost 18 years after the definition was first crafted in *Cleary* in 1986.  To say that this definition was crafted by a legislature that was "taking its cue from Justice Pfeifer" is certainly not supported by that timeline.

{¶34}   Further, consideration of S.B. 123 overall makes this connection even further attenuated.   The legislation covered numerous aspects of motor vehicle law: license suspension provisions, OMVI and OMVUAC laws, and many other miscellaneous provisions.  *See generally* Ohio Bill Analysis, 2002 S.B. 123.  And the manner in which some of those provisions were enacted will become key to answering the question posed to this court.

{¶35}   One of the main things that the General Assembly did was it created a new offense named "having physical control of a vehicle while under the influence."   This

21

offense, codified at R.C. 4511.194, makes it a misdemeanor of the first degree to be in physical control of a vehicle while intoxicated. *See* R.C. 4511.194(B). The statute defines "physical control" as "being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device." *See* R.C. 4511.194(A)(2). As it relates to the creation of this new offense, the Ohio Legislative Service Commission ("LSC") wrote:

> The new offense is linked to the definition of "operate" that the act enacts in R.C. 4511.01 and that, in relevant part, applies to the offenses of state OVI and state OVUAC under the act. Under the act, state OVI and state OVUAC prohibit a person from operating a vehicle, streetcar, or trackless trolley in specified circumstances. And under the act's definition of "operate," a person must cause, or have caused, movement of the vehicle, streetcar, or trackless trolley on any public or private property used by the public for purposes of vehicular travel or parking. Thus, under the act, if a person does not cause, and has not caused, movement of a vehicle, streetcar, or trackless trolley in the specified manner, the person has not committed state OVI or state OVUAC. However, if the person is in the driver's position of a stationary vehicle, streetcar, or trackless trolley and possesses the ignition device, the person might have committed the new offense of having physical control of a vehicle while under the influence. (R.C. 4511.01(HHH), 4511.19(A) and (B), and 4511.194.)

Ohio Bill Analysis, 2002 S.B. 123. Thus, the legislative history of the new definition of the word "operate" was tied to the legislature's decision to create a separate offense for physical control.

**{¶36}** As I see the development of S.B. 123 in the context of *Cleary/Gill*, I see the General Assembly taking the nondriving aspects of the judicially-created definition of the word "operate" and creating a separate offense therefor. In order to do that, it had to excise those nondriving aspects of the term operate. But it expressly did so only in a limited context. The new definition of "operate" was expressly limited by its terms to R.C. Chapters 4511 and 4513. It was not made applicable to R.C. Chapter 4510. This is significant because the "driving under OMVI suspension or revocation" was also drastically revised in the same bill. As the LSC wrote, the bill:

> Relocates the offense of "driving under OMVI suspension or revocation," includes within the offense the prohibition against operating a vehicle while under a Vehicle Implied Consent Law or an R.C. 4511.196 suspension, renames the offense as "driving under OVI suspension," expands and modifies some of its elements, extends to six years the "look back" period used in determining the sentence for the offense, enacts a new sentencing structure for the offense, specifies that certain vehicle immobilization, impoundment, and forfeiture provisions apply only if the involved vehicle is registered in the offender's name, relocates the pretrial vehicle seizure and retention provisions applicable regarding the offense, and modifies the procedures to conform them to the act's vehicle immobilization, impoundment, and forfeiture provision changes.

Ohio Bill Analysis, 2002 S.B. 123. As for the offense itself, the act:

> prohibits a person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended subsequent to a conviction of state OVI or state OVUAC, under the Vehicle Implied Consent

Law * * *, under R.C. 4511.196 * * *, or for a violation of a municipal OVI ordinance * * * from operating any motor vehicle upon Ohio's highways or streets during the period of the suspension (R.C. 4510.14(A)). The act does not include within this prohibition the former prohibition against a person operating a vehicle contrary to the terms of occupational driving privileges granted to the person, but it enacts a related prohibition in R.C. 4510.11, as described below in "Driving under suspension other than under the Financial Responsibility Law, or in violation of a license restriction" (R.C. 4510.11).

(Selected internal references omitted.) *Id.*

{¶37} And so we are faced with two distinct sets of legislation within the bill. First, as it relates to OVI offenses, we have that portion of the act that creates a separate definition of "operate" designed to allow for the separate prosecution for driving while impaired and being in physical control of a vehicle while impaired. But also, *in this same act*, the General Assembly reorganized the offense of operating a motor vehicle with an OVI suspension and crafted the legislation so that the definition of "operate" found in R.C. 2911.01(HHH) did not apply to it.

{¶38} Given this information, how do we divine the legislative intent? There are several rules of statutory construction that guide our inquiry. First, "[i]t is presumed that the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment." *Clark v. Scarpelli*, 91 Ohio St.3d 271, 278, 744 N.E.2d 719 (2001). Thus, while I cannot agree that S.B. 123 was a reaction to the *Cleary/Gill* interpretation of the term "operate," I can assume that the General Assembly was aware of it. This is made amply clear by the fact that the legislature took the *Cleary/Gill* definition, cleaved the nondriving aspects from it, and created a second offense.

**{¶39}** And from that point, we continue to the principle that the reenactment of a statute creates a presumption of legislative adoption of previous judicial construction. *Shapiro v. U.S.*, 335 U.S. 1, 2, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). As demonstrated, the legislature understood the *Cleary/Gill* definition, and adapted it in the context of OVI offenses. The driving under an OVI suspension statute was reenacted with the same use of the term "operate" that it had before S.B. 123, though codified elsewhere in the Revised Code. Having demonstrated this awareness of the judicially-created definition, we can conclude that the legislature intended for the courts to interpret the term "operate" as it had for the prior 18 years unless there is a reason *in the legislation* not to do so.

**{¶40}** And this leads us to the next point: the legislature enacted both R.C. 4511.01(HHH) and reorganized R.C. 4510.11 *in the same legislation* and yet crafted it so that R.C. 4511.01(HHH) did not apply to R.C. 4510.11. To assume that the legislature intended the definition to apply where it expressly does not is to undo a portion of that legislation which limits the application of the definition. *See D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 26, citing *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 372-373, 116 N.E. 516 (1917) (the court should avoid that construction which renders a provision meaningless or inoperative). In interpreting a statute, courts cannot delete language used in the statute. *Cleveland Elec. Illuminating Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988).

**{¶41}** Considering the rules of statutory construction, we have reached the following conclusions: the legislature knew about the judicially-created definition of operate, it decided to refine the definition to allow for the separate OVI prosecution of driving and having physical control, it moved and completely revised the driving with an OVI suspension offense, and it did not utilize the new definition of operate in that context.

25

{¶42} The majority makes a great deal of the fact that R.C. 4510.14 uses the word driving several times seemingly interchangeably with the word operate so as to demonstrate that the legislature considered them to be synonymous. But I disagree. R.C. 4510.14(B) states that "Whoever violates this section is guilty of driving under OVI suspension." That is where the word "driving" comes from in the legislature's repeated used of the term: the title "driving under OVI suspension." I do not find it significant that the section repeatedly uses the title given to the offense.

{¶43} And contrary to the majority's assertion, the legislature does not consider operate and drive to be synonymous. For example, in the definitional section applicable to all of R.C. Title 45, the General Assembly defines "operator" as "any person who drives or operates a motor vehicle upon the public highways." R.C. 4501.01(X). There would be no need to call an operator someone who either drives OR operates a motor vehicle unless those words do not mean the same thing. It is also worth noting that the legislature changed portions of R.C. 4501.01 in S.B. 123, and it neither amended its definition of the word "operator" nor included the new definition of "operate" in that general definitional section.

{¶44} The majority also finds significant the analysis from the Ohio Supreme Court in *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706. But that case is different on a fundamental level from the issues this court is addressing. In *Doe*, the parents of a child who was sexually molested on a school bus sued the school district claiming that the bus driver had been negligent for failing to properly monitor the children on the bus. The parents sought to establish that the district was not entitled to sovereign immunity because the bus driver had been negligent in his operation of

the school bus. *See* R.C. 2744.02(B)(1). They argued that "operating" the bus included all of the duties a bus driver has, not merely the driving of the bus.

{¶45}   In the context of our analysis, the *Doe* court stated the following:

Since *Cleary*, the General Assembly has amended R.C. 4511.01 to add a definition of "operate." Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2951. R.C. 4511.01(HHH) provides that "operate" means "to cause or have caused movement of a vehicle, streetcar, or trackless trolley." That statute was in effect at the time of the events that precipitated this case. *Id.* at 3216.

Although the R.C. 2744.02(B)(1) exception to immunity for the negligent operation of a motor vehicle predates the General Assembly's addition of R.C. 4511.01(HHH)'s definition of "operate," that definition nevertheless sheds light on the meaning of "operation" in R.C. 2744.02(B)(1). R.C. 2744.01(E) expressly points to R.C. 4511.01 for the definition of "motor vehicle" in R.C. Chapter 2744. The definition of "operate" in R.C. 4511.01 is also useful in gleaning the meaning of "operation" in R.C. 2744.02(B)(1). *See, e.g., Meeks v. Papadopulos*[, 62 Ohio St.2d 187, 191–92, 404 N.E.2d 159 (1980)] ("the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code").

In any event, the definition of "operate" in R.C. 4511.01(HHH) is generally consistent with the interpretation courts have given to "operation" under R.C. 2744.02(B)(1). For example, in *Doe v. Jackson Local School Dist.*,

5th Dist. [Stark] No. 2006CA00212, [2007-Ohio-3258, ¶ 23], the court rejected a claim that the immunity exception for the negligent operation of a motor vehicle included the supervision of students who were passengers in a school minivan. The court noted that while pupil management may well be part of the driver's responsibility, it is a responsibility that is separate and distinct from that of the operation of the motor vehicle. *Id.* And in *Doe v. Dayton City School Dist. Bd. of Edn.*[, 137 Ohio App.3d 166, 738 N.E.2d 390 (2d Dist.1999)], the court rejected an argument that the alleged negligent supervision of students on a school bus, which failed to prevent a sexual assault of a minor student, amounted to negligent operation of a motor vehicle. [*Id.* at 172.] The court reasoned that the student suffered harm as a result of an external factor, the conduct of another student, and that the harm was not directly traceable to the driver's operation of the bus, as required by R.C. 2744.02(B)(1). *Id.*

*Id.* at ¶ 23-25.

{¶46} There are several distinctions between the analysis in *Doe* and this case. First, as the *Doe* court notes, the legislature specifically looked to the definitional section in R.C. 4511.01 for the definition of the term "motor vehicle" rather than the one listed in R.C. 4501.01. Thus, the legislature had tacitly tied that provision to the immunity statute. Further, the court noted that the definition of "operate" found in R.C. 4511.01(HHH) fit more directly with prior court interpretation of that word in the context of negligent operation. And the reality is that such a definition makes practical sense in the context of immunity and negligence. It would be difficult to imagine how an employee could be

28

negligent in the operation of a motor vehicle by simply sitting in the driver's seat with the key in the ignition.

{¶47}    But this logic does not hold true in the context of R.C. 4510.14(A).  In the context of that offense, there is every reason to believe that the General Assembly would want to prohibit conduct beyond driving in this context.  Ms. Wilson is a perfectly adequate example of this.  At some point, Ms. Wilson made the decision to operate a motor vehicle while intoxicated.  At some point, Ms. Wilson was stopped by a member of law enforcement, and she was arrested for OVI.  At some point, Ms. Wilson stood before a judge and was found guilty of that offense.  And at that point, Ms. Wilson had her driver's license suspended for at least one year.  She was, no doubt, informed of this fact.  Fast forward to the events of this case.  As the majority set the stage:

> After a night of partying, defendant-appellant Katherine Wilson and her friends were kicked out of the house early in the morning by parents who were less than pleased with the festivities. They stumbled across the street and decided to "sleep it off" in a car parked across from the house. Ms. Wilson made herself at home in the driver's seat * * *.

Three hours after the group was reported to the police, "Officer Hains identified the reported vehicle and approached, finding four individuals fast asleep inside the running car, with Ms. Wilson at the helm of the driver's seat."

{¶48}    Ms. Wilson, having been previously convicted of OVI, having previously been told not to operate a vehicle, decided to party with her friends and sleep it off in a running car.  Ms. Wilson *is* the example of why the legislature would not want someone with an OVI suspension to be behind the wheel of a car with the means to drive it in her possession.  Having made this series of poor decisions, the legislature had every right to cut her off

before she made the next—perhaps fatal—one.  As the *Gill* court noted, the "[p]rohibition of potentially harmful conduct need not await occurrence of the act."  *Gill*, 70 Ohio St.3d at 154, 637 N.E.2d 897.  There is every reason to believe that the General Assembly intended that once someone has been convicted of an OVI offense, that person should be nowhere near operating a motor vehicle.  In fact, the Ohio Jury Instructions, as of February of this year, continue to define "operate" in the context of driver's license offenses as

> a broader term than driving.  It includes not only a person being in control of a vehicle while it is in motion  but also a person, whether conscious or unconscious, in the driver's location in the front seat of a stationary vehicle so as to be capable of doing any act or series of acts which could cause or contribute to the vehicle being put in motion.  It is not necessary to prove that the defendant ever had the vehicle in motion or intended to put the vehicle in motion.

*Ohio Jury Instructions*, CR Section 710.12(A)(1)(a) (Rev. Nov. 20, 2004).  And in the comment section to that instruction, the author notes "[t]he statutory definition of 'operate' created by R.C. 4511.01(HHH) applies by its terms only to violations of Chapters 4511 and 4513 of the Revised Code.  Due to the limited scope of this definition, the term 'operate' continues to be defined by the law of any other traffic violations."  *See State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 97 (Lanzinger, J., dissenting) (although the Ohio Jury Instructions are not binding legal authority, they are, nonetheless, helpful as an example of the generally accepted interpretation of Ohio statutes).

{¶49}   The legislature limited the application of R.C. 4511.01(HHH) for a reason.  It declined to apply that definition to R.C. 4510.14(A) for a reason.  I believe that reason was to prevent people like Ms. Wilson not just from driving a motor vehicle, but from putting

herself into a position where she could possibly do so. There is nothing in the history or application of S.B. 123 that would lead me to conclude that the legislature intended otherwise. Therefore, I dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.