OPINION
{¶ 1} The State of Ohio appeals from an order sustaining a motion to suppress the crack cocaine which is the basis of the indicted charge of possession of crack cocaine. Because we agree with the State that the evidence should not have been suppressed, we will reverse the order of suppression, which the State assigns as error, and remand to the trial court for further proceedings.
 {¶ 2} The seizure of the crack cocaine followed the arrest of Jeffrey Peters for driving under suspension. The trial court determined that Officer Wiggins, who arrested Peters for driving under suspension, lacked probable cause to do so.
 {¶ 3} Peters and a female companion were seated in a parked car in the parking lot of a City of Dayton park at 1:30 a.m., after the park was closed, when they were approached by Officer Wiggins. Peters was seated in the driver's seat and when asked by Officer Wiggins to show his hands, Peters did so, holding the car keys in his right hand before depositing them on the dashboard. Peters and the female occupant were asked to exit the car and, after being unable to produce identification, they were put in Wiggins' and another backup cruiser for identification purposes. After running their identifiers through the onboard computer, it was learned that Peters' driving privileges were suspended and that there were three arrest warrants for the woman. Wiggins arrested Peters for driving under suspension and the woman was arrested on the warrants. The crack cocaine was found in Peters' sweatshirt pocket after he was arrested.
 {¶ 4} In determining that Officer Wiggins lacked probable cause to arrest Peters for driving under suspension, the trial court stated:
 {¶ 5} "Contrary to the argument advanced by the State of Ohio, the facts establish the following: First, Officer Wiggins did not observe anything to indicate the vehicle was running; secondly, Officer Wiggins did not observe any fumes nor exhaust coming from the vehicle; thirdly, Officer Wiggins testified that the vehicle was not running when he approached it; fourth, Officer Wiggins did not ask either of the occupants who was the driver of the vehicle; fifth, Officer Wiggins made no inquiry as to how long the vehicle had been there prior to his arrival; and lastly, there is no evidence short of conjecture that the Defendant was driving the vehicle rather than the female occupant. Sitting in the driver's seat is insufficient to establish probable cause for operation of a motor vehicle, i.e., driving under suspension."
 {¶ 6} As to the first three facts identified by the trial court in its analysis, the State contends that Officer Wiggins — whose testimony was unrebutted — testified that he had observed the car running. His testimony on direct was:
 {¶ 7} "Q. And was the car running at the time that you pulled up on it?
 {¶ 8} "A. As I was pulling up, the car was running. I was able to see into the vehicle easily. There was no fog or anything on the windows, so it was running with — I would assume the heater was running.
 {¶ 9} "MR. TURNER (defense counsel): Objection.
 {¶ 10} "THE COURT: Well, I'll strike what he assumed and that will be disregarded."
 {¶ 11} On cross, he testified as follows:
 {¶ 12} "Q. At what point did you observe or at least recognize that that vehicle was running?
 {¶ 13} "A. As I was coming down the path that leads — the driveway path that leads down into the parking lot, I was unable to see the back end of the vehicle to see if the exhaust was actually spewing smoke or anything along that line to show that the vehicle was running, but as I approached the vehicle, I was able to see into it very easily, meaning that there was no fog or anything, where on a cold night if someone had sat in the vehicle —
 {¶ 14} "Q. Just did you observe anything that indicated it was running?
 {¶ 15} "A. No, sir, I did not.
 {¶ 16} "Q. Okay. And you testified you saw no fumes or exhaust coming out of the vehicle?
 {¶ 17} "A. Correct.
 {¶ 18} "Q. And when you approached the vehicle, the driver's side door, as you testified previously, was the car running at that point? I think you had testified previously that —
 {¶ 19} "A. No, it was not."
 {¶ 20} Although we are inclined to agree that Officer Wiggins' testimony is to the effect that he observed the car running at least at the outset of his investigation, his testimony is not entirely clear, and we therefore defer to the trial court on these clearly factual findings. See State v. Rutherford (1994), 93 Ohio App.3d 586, 592.
 {¶ 21} We agree with the State that even if — as the trial court found — Officer Wiggins did not observe the car to be running, he nevertheless had probable cause to believe that Peters had been driving under suspension.
 {¶ 22} The trial court correctly stated that "probable cause exists when the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed." The court concluded, however, that "(s)itting in the driver's seat is insufficient to establish probable cause for operation of a motor vehicle. . . ."
 {¶ 23} We believe that the trial court's analysis ignored a critical fact: Officer Wiggins testified that when Peters raised his hands so that Wiggins could observe them, Peters was holding the car keys in his right hand.
 {¶ 24} Peters was charged with "operating" a motor vehicle while his operating privileges were suspended. Both R.C. 4510.11(A) and § 71.19 of City of Dayton Code of Ordinances, in proscribing driving under suspension, utilize the word "operate" in so doing.
 {¶ 25} Much of the Ohio jurisprudence defining "operating" arises out of driving under the influence cases. R.C. 4511.19, which proscribes driving under the influence, utilizes the word "operate" in so doing. It has been held that "operating" has the same meaning for purposes of DUI and DUS cases. See Columbus v. Robinson (May 21, 1996), Franklin App. No. 95APC10-1364.
 {¶ 26} In State v. Cleary (1986), 22 Ohio St.3d 198, the court concluded that the driver was operating a motor vehicle where he had parked his car in a convenience store parking lot and was found asleep with the motor running.
 {¶ 27} In State v. Gill (1994), 70 Ohio St.3d 150, the court held in its syllabus:
 {¶ 28} "A person who is in the driver's seat of a motor vehicle with the ignition key in the ignition and who, in his or her body has a prohibited concentration of alcohol, is `operating' the vehicle within the meaning of R.C. 4511.19 whether or not the engine of the vehicle is running. (State v. Cleary [1986], 22 Ohio St.3d 198, 22 OBR 351,490 N.E.2d 574; State v. McGlone [1991], 59 Ohio St.3d 122,570 N.E.2d 1115, applied and followed)."
 {¶ 29} The court in Gill discussed Cleary in part as follows:
 {¶ 30} "In Cleary, the defendant had parked his automobile in the parking lot of a King Kwik store. He was found asleep in the driver's seat with the motor running. We held that the defendant's conduct was proscribed by R.C. 4511.19(A)(1) and stated that:
 {¶ 31} "While this section deals with the prohibition against driving while under the influence and much of the literature and discussion on the subject refer to `driving,' that word and `operating' are not synonymous. This statute has been reviewed and amended over the years and the General Assembly continues to adhere to the word `operate.' Therefore, the prohibition contained in the statute is against `operating' a vehicle while under the influence, not merely `driving' it. The term `operating' encompasses a broader category of activities involving motor vehicles than does `driving.' Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within the contemplation of thestatute is a broader term than mere driving and a person in the driver'sposition in the front seat with the ignition key in his possessionindicating either his actual or potential movement of the vehicle whileunder the influence of alcohol or any drug of abuse can be found inviolation of R.C. 4511.19(A)(1). (Emphasis added). Id. at 199, 22 OBR at 352, 490 N.E.2d at 575.
 {¶ 32} "Our holdings in Cleary and McGlone were never intended to require the state to prove that the defendant had started the vehicle's engine after consuming alcohol or that the engine was running at the time the defendant is apprehended. A clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse. Accord Cleary and McGlone,
supra. Prohibition of potentially harmful conduct need not await occurrence of the act."
 {¶ 33} We see little to distinguish Gill's having his key in the ignition — but in "the opposite direction (`ACC' position) to that required to start the engine," Gill, 151 — and Peters' having his car keys in his right hand. Both Gill and Peters were in the driver's seat and both had the ability to move the car — Gill while under the influence and Peters while under suspension.
 {¶ 34} Based on the undisputed facts and the supreme court's interpretation of "operation," we conclude that Officer Wiggins had probable cause to believe Peters was operating a motor vehicle while his privilege to do so was suspended. More than mere conjecture supported his belief.
 {¶ 35} The assignment of error is sustained.
 {¶ 36} The order suppressing evidence will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.
Fain, J. and Grady, J., concur.