[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Wilson*, Slip Opinion No. 2022-Ohio-3202.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3202

THE STATE OF OHIO, APPELLANT, *v.* WILSON, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Wilson*, Slip Opinion No. 2022-Ohio-3202.]**

*R.C. 4510.14(A)—Driving under a license suspension imposed for operating a vehicle while under the influence of alcohol or drugs—Definition of "operate" under R.C. 4510.14(A)—Court of appeals' judgment vacating defendant's conviction affirmed.*

(No. 2020-0721—Submitted June 16, 2021—Decided September 14, 2022.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-190281, 2020-Ohio-1584.

_____

**BRUNNER, J.,** announcing the judgment of the court.

**I.  FACTS AND PROCEDURAL HISTORY**

{¶ 1} The parties do not dispute the facts of this case.  During the night of February 13 through early February 14, 2018, appellee, Katherine Wilson, and three of her friends were up late and were thrown out of one of the friends' house

by the friend's parent. They then decided to sleep in a car parked near the house. Wilson occupied the driver's seat and, because it was cold outside, turned the car on and ran the heater. That is how the four friends were discovered hours later, all asleep, by a police officer responding to a call from a concerned neighbor. There was no evidence that Wilson had moved the car that morning. But because she was in the driver's seat while the car was running and her license was suspended at the time due to a prior conviction for operating a vehicle while under the influence of alcohol or drugs ("OVI"), the officer cited her for driving under a suspended license. Though the ticket had indicated a violation of R.C. 4510.16 (which concerns driving under a license suspension imposed for financial-noncompliance reasons), the charge was amended to reflect a violation of R.C. 4510.14 for driving under an OVI suspension.

{¶ 2} Despite there being no evidence that Wilson had moved the car, the trial court found her guilty of driving under an OVI suspension, sentenced her to three days in jail, and imposed a $250 fine. The trial court stayed execution of Wilson's sentence pending her appeal of the conviction.

{¶ 3} The First District Court of Appeals reversed Wilson's conviction. 2020-Ohio-1584, 154 N.E.3d 208, ¶ 28. It noted that this court had twice defined "operation of a motor vehicle" as a person's being in the driver's position of a vehicle while having possession of the ignition key. *Id.* at ¶ 8-9, citing *State v. Cleary*, 22 Ohio St.3d 198, 199, 490 N.E.2d 574 (1986), and *State v. Gill*, 70 Ohio St.3d 150, 154, 637 N.E.2d 897 (1994). And it noted that under R.C. 4510.14(A), a person whose license is suspended for an OVI offense shall not " 'operate any motor vehicle upon the public roads or highways.' " 2020-Ohio-1584 at ¶ 6, quoting R.C. 4510.14(A). However, it determined that the General Assembly signaled a departure from the judge-made definition of "operate" when, in 2002, it enacted R.C. 4511.01(HHH), which defines "operate" as "to cause or have caused movement of a vehicle," and enacted R.C. 4511.194, the separate offense of having

physical control of a vehicle while under the influence, which forbids a person from being intoxicated while "in the driver's position * * * of a vehicle * * * [while] having possession of the vehicle's * * * ignition key." 2020-Ohio-1584 at ¶ 10-21. The court of appeals thus concluded that in order for the state to prove the element of "operated" under R.C. 4510.14(A), it must present sufficient evidence showing some movement of the vehicle. 2020-Ohio-1584 at ¶ 28.

{¶ 4} We accepted the state's discretionary appeal to consider the following issue:

> In proving whether a defendant has violated the law by operating a motor vehicle under one of the suspensions set forth in R.C. 4510, whether the definition of the term "operate" is governed by R.C. 4511.01(HHH) or this Court's interpretation of the term as set forth in *State v. Cleary* and its progeny.

*See* 160 Ohio St.3d 1494, 2020-Ohio-5634, 159 N.E.3d 281. For the reasons that follow, we affirm the judgment of the First District.

## II. STANDARD OF REVIEW

{¶ 5} This case concerns a question of statutory interpretation, which we review de novo. *See State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 20.

## III. ANALYSIS

{¶ 6} Wilson was convicted of driving under an OVI suspension, in violation of R.C. 4510.14(A), which prohibits any person whose driver's license is suspended for an OVI offense from operating a motor vehicle on Ohio's public roads or highways. There is no dispute that Wilson's license was suspended for an OVI offense at the time of the alleged offense. At issue is whether, by sleeping in

the driver's seat of the parked motor vehicle with the key in its ignition and its engine running, when there was no evidence that she had moved or intended to move the vehicle, there was sufficient evidence that Wilson "operated" it such that she could be guilty of driving under an OVI suspension pursuant to R.C. 4510.14(A).

{¶ 7} No provision in the Revised Code directly answers this question. Nothing in R.C. Chapter 4510 or the definitions or general provisions in R.C. Chapter 4501 defines the term "operate." R.C. 4511.01(HHH) is the only relevant provision in the Revised Code that defines "operate," stating that " 'operate' means to cause or have caused movement of a vehicle." But that definition is limited by R.C. 4511.01's general caveat that its definitions apply "[a]s used in this chapter [, i.e., R.C. Chapter 4511,] and in Chapter 4513 of the Revised Code." There is no legislative or caselaw authority requiring that the definition ("to cause or have caused movement of a vehicle") be applied to offenses contained in R.C. Chapter 4510, including the offense involved here, R.C. 4510.14(A).

{¶ 8} In 1986, before any definition of the term "operate" existed in the Revised Code, this court was tasked with determining the meaning of that term in the context of an OVI offense under R.C. 4511.19. *See Cleary*, 22 Ohio St.3d 198, 490 N.E.2d 574, *superseded by statute as stated in Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706 ("*Marlington*"). In *Cleary*, police found a drunk man passed out in his car and slumped over its steering wheel with his foot on the accelerator, causing the car's engine to race. *Id.* at 198. But the car's parking brake was engaged, and its transmission was not in gear. *Id.* This court reasoned:

> Th[e] [OVI] statute has been reviewed and amended over the years and the General Assembly continues to adhere to the word "operate." Therefore, the prohibition contained in the statute is

against "operating" a vehicle while under the influence, not merely "driving" it. The term "operating" encompasses a broader category of activities involving motor vehicles than does "driving." Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1).

*Id.* at 199. "Such a broad definition" of "operate," we explained, was "essential to achieve the legislative purpose of the statute, discouraging those who have consumed too much alcohol from undertaking the operation of motor vehicles." *Id.* at 200. We later clarified that in OVI cases in which the vehicle's engine was *not running* but the keys were in the ignition, the definition from *Cleary* applied. *See Gill*, 70 Ohio St.3d 150, 637 N.E.2d 897, at syllabus; *see also State v. McGlone*, 59 Ohio St.3d 122, 570 N.E.2d 1115 (1991), syllabus.

{¶ 9} Approximately a decade after our decision in *Gill*, in 2002, the General Assembly enacted through Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 3001 ("S.B. 123"), the new offense of "[h]aving physical control of [a] vehicle while under the influence," R.C. 4511.194, and delayed its effective date until 2004. The current version of R.C. 4511.194 prohibits a person from being intoxicated while in "physical control" of a vehicle and defines "physical control" as "being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device," R.C. 4511.194(A)(2). S.B. 123 also established a statutory definition of "operate" for purposes of R.C.

Chapters 4511 and 4513, which respectively address the operation of motor vehicles and motor-vehicle equipment and loads. Under the statutory definition, " '[o]perate' means to cause or have caused movement of a vehicle." R.C. 4511.01(HHH). In other words, as to OVI offenses (and the other offenses prescribed in R.C. Chapters 4511 and 4513), the General Assembly superseded the *Cleary*/*Gill* definition of "operate."

{¶ 10} Thus, today, the definition of "operate" in R.C. 4511.01(HHH) applies by its own terms to only R.C. Chapters 4511 and 4513 and not, for instance, the offenses involving "operating" a vehicle while under various types of suspensions found in R.C. Chapter 4510. And again, that definition superseded the definition of "operate" that this court established in the context of *OVI offenses* under R.C. 4511.19 in *Cleary* and *Gill*. For the offense at issue, which is set forth in R.C. 4510.14, there is no binding definition of "operate" provided by our caselaw or the Revised Code. We therefore must look to other sources for its definition in this context.

{¶ 11} In *Marlington*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, a student was molested by another student on a moving school bus, prompting the former's guardians to sue the school district, a school official, and the bus driver. *Id.* at ¶ 3-6. A key issue we considered was whether the school district's alleged failure to supervise the students constituted "negligent operation of a motor vehicle within the meaning of R.C. 2744.02(B)(1)," such that the plaintiffs could avoid the political-subdivision-immunity defense generally available to a school district under R.C. Chapter 2744. *Marlington* at ¶ 1.

{¶ 12} We determined in *Marlington* that the plaintiffs' reliance on *Cleary*'s broad definition of the term "operate" was "misplaced," because *Cleary* involved an OVI offense under a prior version of R.C. 4511.19 and not the General Assembly's more recent relevant enactments. *Marlington* at ¶ 22-23; *see also Cleary*, 22 Ohio St.3d at 198-199, 490 N.E.2d 574. We stated that the *Cleary*

definition of "operate" may not "be taken as a license for expanding the meaning of operation of a motor vehicle under R.C. 2744.02(B)(1) to include anything a driver may do [or not do] while driving." *Marlington* at ¶ 22. We found that notwithstanding the facial inapplicability of R.C. 4511.01(HHH)'s definition of "operate" outside of R.C. Chapters 4511 and 4513, "the General Assembly's addition of R.C. 4511.01(HHH)'s definition of 'operate[]' * * * nevertheless sheds light on the meaning of 'operation' in R.C. 2744.02(B)(1)." *Marlington* at ¶ 24. And we concluded that "the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence *in driving or otherwise causing the vehicle to be moved*." (Emphasis added.) *Id.* at ¶ 26. Thus, in *Marlington*, this court acknowledged that the broad definition of "operate" from *Cleary* and *Gill* was applicable in limited (and earlier occurring) contexts, but we chose to construe the statutory definition in R.C. 4511.01(HHH) as persuasive authority even though, by its terms, it did not directly apply outside of R.C. Chapters 4511 and 4513.

{¶ 13} The common definition of "operate," when viewed in the context of what is being operated, also persuades us that Wilson did not operate the vehicle. The Oxford English Dictionary defines the word "operate" as "[t]o cause or actuate the working of; to work (a machine, etc.)." *Oxford English Dictionary* 848 (2d Ed.1989). And although there are many machines that can be "operated" without their being moved, the particular function of a "motor vehicle" is to move and provide transportation on roads. *See* R.C. 4501.01(B). R.C. 4501.01(B) excludes from the definition of "motor vehicle" many incidentally mobile machines, including certain construction equipment, farm machinery, and other machinery that is slow-moving or "not designed for or employed in general highway transportation." Thus, operating a motor vehicle "upon the public roads or highways," R.C. 4510.14(A), consists of utilizing the vehicle for its definitive purpose—movement and transportation.

**{¶ 14}** It is also persuasive that R.C. 4510.14 is titled "*[d]riving* under OVI suspension," and that the prohibited conduct under R.C. 4510.14(A) is "*operat[ing]* any motor vehicle upon the public roads or highways within this state during the period of [an OVI] suspension."[1]  (Emphasis added.)  Perhaps there is a certain equivalence between the terms "driving" and "operating" in this limited context.  The term "driving" is not defined in the Revised Code, but this court has previously noted that "[t]he words, 'driving,' and, 'propulsion,' are not used as words of art in the motor fuel use and sales tax statutes," *Shafer v. Glander*, 153 Ohio St. 483, 489, 92 N.E.2d 601 (1950). According to this court in *Shafer*, those terms are therefore "to be given their generally understood meanings.  Both of the words connote forward movement." *Id.*; *see also Oxford English Dictionary* 1058 (2d Ed.1989) (defining "drive," in relevant part, as "[t]o guide a vehicle * * * to act as driver; also, to travel * * * under one's own direction or at one's disposal").

**{¶ 15}** Finally, overusing the expanded definition of "operate" from *Cleary* and *Gill* might lead to a finding of criminal conduct when there was none.  For

---

1. The dissenting opinion criticizes us for noting that this offense is named "[d]riving under OVI suspension," R.C. 4510.14.  We agree with the dissenting opinion's statement that statutes' titles " 'do not constitute any part of the law.' "  Dissenting opinion, ¶ 55, quoting R.C. 1.01.  Still, we may find what has been used to organize a law's enactment worth noting, especially when, as here, the title is designated by the enacted statutory text and appears four times within the language of the enactment.  *See* R.C. 4510.14(B)(1) through (3).  Thus, even though "the original version of R.C. 4510.14 enacted by the legislature in 2002 * * * did not contain any section titles," dissenting opinion at ¶ 55, the enactment did designate the title to which we have referred.  Every enacted version of R.C. 4510.14(B) includes, *within the statutory text*, the following language setting forth the title: "Whoever violates this section is guilty of driving under OVI suspension."  R.C. 4510.14(B); S.B. 123, 149 Ohio Laws, Part II, 2467, 2889; Am.Sub.H.B. No. 490, 149 Ohio Laws, Part V, 9484, 9772; 2011 Sub.H.B. No. 5.  And the enacted text refers to the offense by this name four times.  *See* R.C. 4510.14(B)(1) through (3); 149 Ohio Laws, Part II, at 2889-2991; 149 Ohio Laws, Part V, at 9772-9774; 2011 Sub.H.B. No. 5.  That the title "[d]riving under OVI suspension" reflects this language and has done so consistently since R.C. 4510.14 was first enacted in 2002 (with an effective date of 2004) is not an affront.  We simply note it as a guide for helping to understand what exists in the law itself.  Thus, it is not that we "should know better" than to refer to it, dissenting opinion at ¶ 55, but rather, in service to those who rely on the law to conform their conduct to it and advise others of the same, we may point out what the law means to help Ohioans be well-informed about what it allows and what it does not.

instance, R.C. 4510.12 prohibits "operat[ing] any motor vehicle upon a public road or highway * * * unless the person has a valid driver's license." But if the definition of "operate" were to include a person's merely sitting in the driver's seat of a motor vehicle while in possession of the key, then a child who listens to music while sitting in the driver's seat of a car parked on a public road while the key is in the ignition is guilty of "operating a motor vehicle without a valid license," R.C. 4510.12(B). The broad, judicially created definition of "operate" from *Cleary* and *Gill* could also result in the criminalization of conduct necessitated by unfortunate economic circumstances, such as a person's temporarily taking shelter in a car against inclement weather when the person's driver's license is suspended. *See also* R.C. 4510.11 (prohibiting operating a motor vehicle under a suspended license); R.C. 4510.22 (authorizing courts to suspend a person's license for failure to pay fines); R.C. 4510.111 (prohibiting operating a motor vehicle when the person's license is suspended for nonpayment of fines or child support); R.C. 4510.16(B) (prohibiting operating a motor vehicle when the person's license is suspended for failure to maintain automobile insurance or other proof of financial responsibility). These outcomes would upend the statutory presumption that the General Assembly's enactments are intended to create just and reasonable results. *See* R.C. 1.47(C).

{¶ 16} The dissenting opinion criticizes our view as "effectively overrul[ing]" *Cleary* and *Gill* and accuses us of engaging in legislation to apply R.C. 4511.01(HHH) to a context in which it facially does not apply. Dissenting opinion, ¶ 50. This is a mischaracterization. We do not overrule *Cleary* and *Gill*. And there is no need to do so. *Cleary* and *Gill* were decided in the context of the OVI statute, were superseded by the legislature in that context, and this is not an OVI case. Also, we do not directly apply R.C. 4511.01(HHH) because, according to its plain terms, it is inapplicable to R.C. 4510.14 offenses. Rather, we acknowledge that neither caselaw nor statute provides a clearly applicable

definition of "operate" in this context, and we then ask, looking at the statutory scheme as a whole, whether the broad conception in *Cleary* and *Gill* or the narrower movement-based definition in R.C. 4511.01(HHH) more persuasively captures the "just and reasonable results" we are required to presume, R.C. 1.47(C). In doing so, we do no more than what courts routinely do when confronted with undefined words in a statute; we examine their plain meaning and the context in which they are used and determine and apply the appropriate definition of the word.

{¶ 17} We thus conclude that the plain-language definition of "operating" a vehicle (the purpose of which is transportation) involves movement. This is consistent with R.C. 4511.01(HHH) and the legislature's choice, after *Cleary* and *Gill*, to distinguish between the concepts of operation and mere physical control of a vehicle. *Compare* R.C. 4511.19 *with* R.C. 4511.194. As the dissenting opinion even admits, "[o]ne can certainly question the logic of *Gill*: it is doubtful that anyone in common parlance would refer to someone sitting in a parked car with the engine off as operating the car." Dissenting opinion at ¶ 44.

{¶ 18} Though the definition of "operate" in R.C. 4511.01(HHH) is not facially applicable to R.C. 4510.14, we conclude that the definition is relevant when, as in this case, "operate" is not specifically defined in the statute under which the offense was charged. We determine that in order for a person whose license is suspended for an OVI offense to be guilty of driving under an OVI suspension, the person must cause movement of a motor vehicle on the public roads or highways within this state. *See* R.C. 4510.14(A); R.C. 4511.01(HHH).

## IV. CONCLUSION

{¶ 19} In order for a person whose license is suspended for an OVI offense to be guilty of driving under an OVI suspension, the person must be in more than mere physical control of a motor vehicle. The person must cause or have caused movement of the motor vehicle on the public roads or highways within this state

during the period of the suspension. We affirm the judgment of the First District Court of Appeals vacating Wilson's conviction.

Judgment affirmed.

DONNELLY and STEWART, JJ., concur.

FISCHER, J., concurs in judgment only, with an opinion.

O'CONNOR, C.J., dissents.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 20} I concur in the court's judgment, but I would not go as far as to say that the definition of the term "operate" in R.C. 4511.01(HHH) applies to all statutes that employ the term without defining it. Nevertheless, based on the context of R.C. 4510.14 and the definition of "operate" in R.C. 4511.01(HHH), which was adopted by the General Assembly in Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2951 ("S.B. 123"), I would hold that the term "operate" in R.C. 4510.14 does require movement of the vehicle involved in the alleged offense.

{¶ 21} First, this court's decisions in *State v. Cleary*, 22 Ohio St.3d 198, 490 N.E.2d 574 (1986), *superseded by statute as stated in Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, and *State v. Gill*, 70 Ohio St.3d 150, 637 N.E.2d 897 (1994), are not mandatory or persuasive authority in this case because their holdings did not apply to R.C. Chapter 4510 violations and the reasoning in those cases does not apply outside the context of drunk-driving violations under R.C. Chapter 4511. This court based its holdings in *Cleary* and *Gill* on the legislature's "clear purpose" of discouraging "persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse." *Gill* at 154; *see also Cleary* at 199-200. This court held in both cases that the term "operate" in R.C. Chapter 4511 did not require movement

of a vehicle because the statute was meant to discourage intoxicated people from getting behind the wheel and accidentally placing a vehicle in drive or making a drunken decision to drive. *See Cleary* at 201; *Gill* at 154.

{¶ 22} That same reasoning does not apply to situations involving sober people whose licenses have been suspended for operating a vehicle while under the influence of alcohol or drugs ("OVI"). Nor does it apply to situations involving individuals whose licenses have been suspended for other reasons. Yet those individuals are likewise prohibited from "operating" a motor vehicle under R.C. 4510.11. There is no reason to believe that such individuals would accidentally place their vehicle in drive or make a drunken decision to drive the vehicle. Therefore, the reasoning for the decisions in *Cleary* and *Gill* does not apply to R.C. 4510.14, the law at issue in this case.

{¶ 23} As Justice Pfeifer recognized in his dissent in *Gill*, interpreting the term "operate" to include a person's running a vehicle without moving it would prevent sober people whose licenses have been suspended from using their vehicles to listen to the radio or as a "four-wheeled, heated hotel room." *Gill* at 157-158 (Pfeifer, J., dissenting). It seems unlikely that this was the General Assembly's intent.

{¶ 24} Eight years after this court decided *Gill*, the General Assembly enacted S.B. 123, which defined "operate" under R.C. Chapter 4511 to require movement of the vehicle. Given the numbers of years that had passed, it seems unlikely that the General Assembly was acting in response to this court's decisions in *Cleary* and *Gill*. And if the General Assembly was unaware of this court's decisions in *Cleary* and *Gill*, then it must have always intended the term "operate" to require movement of the vehicle. Otherwise, the General Assembly would have amended the law to prohibit "driving" a vehicle while under the influence. Instead, the General Assembly retained the word "operate" and simply defined it to require movement of the vehicle. The dissenting opinion conversely argues that we must

assume the General Assembly was aware of our interpretation of the word "operate" in *Cleary* and *Gill* and that the General Assembly responded to that definition with S.B. 123. But S.B. 123 defined "operate" to require movement of a vehicle. If the dissenting opinion is correct that the General Assembly was acting in response to *Cleary* and *Gill*, then the General Assembly expressly rejected the definition this court applied in those cases.

{¶ 25} S.B. 123 also created the new offense of "having physical control of a vehicle while under the influence," which is codified at R.C. 4511.194. "Physical control" is defined as "being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key." R.C. 4511.194(A)(2). The Ohio Legislative Service Commission's analysis of S.B. 123 referred to the physical-control offense as a "new offense." Ohio Legislative Service Commission, *Final Analysis*, *Am.Sub.S.B. No. 123*, at 116. But that offense would not have been new under the bill if the General Assembly's original definition of "operate" was meant to include controlling the vehicle without moving it. And again, if the General Assembly thought that the definition of "operate" already included simply controlling the vehicle, it likely would have split the original offense of operating a vehicle while under the influence into two offenses: "driving" while under the influence and "having physical control" while under the influence. Instead, the General Assembly retained the original offense of operating a vehicle while under the influence and created a new offense for having control of a vehicle while under the influence, indicating that the definition of "operate" never included a person's having simple physical control without moving the vehicle.

{¶ 26} The state points out that S.B. 123 created the R.C. 4511.01(HHH) definition of "operate" and expressly limited its application to R.C. Chapters 4511 and 4513 while simultaneously amending the offense of driving under an OVI suspension and moving it to R.C. Chapter 4510. The state argues that this shows the General Assembly understood that the definition would apply to only R.C.

Chapters 4511 and 4513 and that a different definition would apply to R.C. 4510.14. But why would the General Assembly use the word "operate" multiple times in the same bill, intend for it to have different definitions within that bill, and define it only once? It seems far more likely that the General Assembly inadvertently neglected to add the new R.C. Chapter 4510 to the list of chapters to which the definition applies. Indeed, the language in R.C. 4511.01 limiting its definitions' application existed before the General Assembly passed S.B. 123's definition of "operate."

**{¶ 27}** While we cannot assume that the General Assembly acted inadvertently and rewrite an unambiguous statute, we may examine the General Assembly's actions to determine its intent. Regarding the law at issue in this case, the General Assembly enacted only one definition of "operate." That definition requires movement of the vehicle. Rather than assume the General Assembly intended two definitions (one express, one implied) to apply to the same word within the same bill, I would infer that the General Assembly intended the definition of "operate" to apply throughout the bill. There is no evidence that the General Assembly intended any other definition to apply, and the General Assembly did not enact any other definition.

**{¶ 28}** Further evidence of the General Assembly's intent is the fact that the section is titled "*driving* under OVI suspension" and the offense is called the same within the actual text of the statute. (Emphasis added.) R.C. 4510.14(B). If the General Assembly had intended to criminalize mere control of a vehicle while under the influence, it would have named the offense "having physical control of a vehicle while under the influence," as it did in R.C. 4511.194(D). Because the language of R.C. 4510.14 and the history of S.B. 123 indicate that the General Assembly intended the term "operate" in R.C. 4510.14 to require movement of the vehicle, I would affirm the decision of the First District Court of Appeals.

**{¶ 29}** I accordingly concur in judgment only.

---

**DEWINE, J., dissenting.**

{¶ 30} The question in this case is what does it mean to "operate" a car? Does a person who runs the engine of a car operate the car? Or does one actually have to drive a car to operate it?

{¶ 31} Under the ordinary meaning of the word, one operates a car by engaging its engine. While the words "operate" and "drive" may possess overlapping usages, one can operate a car without driving it. And in this case, our precedent and statutory context reinforce that the ordinary usage of the word "operate" is the correct one.

{¶ 32} The lead opinion, though, concludes otherwise. It says that a person who engages the engine of a car is not operating the car for purposes of an Ohio statute, R.C. 4510.14(A), which forbids someone who is under a drunk-driving license suspension from operating a motor vehicle. In its view, while the statute uses the word "operate," what it really means is "drive."

{¶ 33} I disagree—so I dissent.

## I. Background

{¶ 34} One February morning, a police officer responded to a call about a suspicious vehicle. He discovered Katherine Wilson and three friends asleep in a car parked on a public street. Wilson was in the driver's seat, the key was in the ignition, the engine of the car was running, and the heater was on. The four apparently had been asked to leave a party at a house on the street and decided to sleep in the car.

{¶ 35} Wilson's driver's license had previously been suspended for operating a motor vehicle while intoxicated ("OVI"). As a result, she was charged with and convicted of operating a motor vehicle while under an OVI suspension in violation of R.C. 4510.14(A). That provision provides: "No person whose driver's * * * license * * * has been suspended * * * for a conviction of a violation of a

15

municipal OVI ordinance shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension." The First District Court of Appeals reversed the conviction in a two-to-one decision. 2020-Ohio-1584, 154 N.E.3d 208, ¶ 28.

## II. Analysis

{¶ 36} This case presents a question of law: Does R.C. 4510.14(A)'s use of the word "operate" encompass a car running idly or does it require movement of the car?

### A. *The Ordinary Meaning of "to Operate" a Motor Vehicle*

{¶ 37} Start with the ordinary meaning of "operate." The verb "to operate" and its various conjugates—operates, operated, operating, operator, operation— appear in the Ohio Revised Code thousands of times across hundreds of chapters. In some instances, a statute defines the meaning of operate, *see, e.g.*, R.C. 1547.11(I)(3); R.C. 4511.01(HHH); R.C. 5501.70(E), in which case the legislature's definition controls, *see State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, 151 N.E.3d 593, ¶ 15; R.C. 1.42. Other times, such as with the law at issue, operate is undefined. Generally, when a word is undefined, we apply its ordinary meaning unless context indicates otherwise. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 17.

{¶ 38} Webster's Dictionary provides several definitions of "operate." *See Webster's Third New International Dictionary* 1580-1581 (1986). The most relevant for our purposes is "to cause to function usually by direct personal effort." *Id.* at 1581. The example it uses for this definition is "to operate a car." *Id.* The Random House Dictionary provides a similar definition: "[T]o work or use a machine, apparatus, or the like." *Random House Dictionary of the English Language* 1357 (2d Ed.1987); *see also Shorter Oxford English Dictionary* 2005 (5th Ed.2002) ("Cause or direct the functioning of; control the working of (a machine etc.)").

{¶ 39} Plugging that ordinary meaning into the statute at hand, Wilson's use of her car constituted operation. By engaging the engine, Wilson caused the car to function. No doubt, a car's primary operation is transportation. But cars function in additional ways, too, such as by playing music, producing an electric charge (think jumper cables), and, as applicable here, heating and cooling. All of these are ways in which a person might operate a car without driving it.

{¶ 40} Indeed, it is significant that the General Assembly chose to criminalize the *operation* of a vehicle while under an OVI suspension, not simply the *driving* of a vehicle. The legislature's choice of verb—operate, not drive—strongly suggests that operation does not require movement. "Drive," the lead opinion correctly observes, connotes the use of a vehicle's movement function, lead opinion, ¶ 14, whereas "operate"—surely the broader word—implicates the full range of a car's functions. "Certainly, had the General Assembly intended" operation to require movement, "it would have chosen words to that effect." *In re Application of Columbus S. Power Co*., 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 26.

*B. Context and Caselaw Reinforce that the Ordinary Meaning of Operate Applies*

{¶ 41} Rather than apply the ordinary meaning, the lead opinion adopts a statutory definition of operate that by its own terms applies only to other chapters of the Revised Code. *See* R.C. 4511.01(HHH). This is a misstep. A little background helps to explain why.

{¶ 42} The statutory definition was enacted after this court in several decisions construed what it meant to "operate" a motor vehicle. In *State v. Cleary*, a police officer found a man who was drunk and passed out in the driver's seat of his running car, which was parked outside of a bar. 22 Ohio St.3d 198, 198, 490 N.E.2d 574 (1986), *superseded by statute as stated in Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706. This court held that "[e]ntering a motor vehicle, putting the key in the ignition[,]

and starting and engaging the engine in a stationary position are sufficient acts to constitute operation within the meaning of R.C. 4511.19(A)(1)." *Id.* at paragraph two of the syllabus. Central to the court's reasoning was that operating "encompasses a broader category of activities" than does driving. *Id.* at 199. This court later reaffirmed that holding in *State v. McGlone*, 59 Ohio St.3d 122, 570 N.E.2d 1115 (1991).

{¶ 43} This court further broadened its construction of operate in consolidated cases in which police found each defendant drunk and sleeping in the driver's seat of his motor vehicle. *State v. Gill*, 70 Ohio St.3d 150, 151, 637 N.E.2d 897 (1994). In each case, the ignition key to the vehicle was in the ignition but the engine was not running. *Id.* One of the lower courts had attempted to distinguish *Cleary* by drawing a line between having the keys in the ignition and having the engine running. *Gill* at 151, 155. But this court rejected that construction of operate and held that placing the key in the ignition, without starting the car, sufficed to trigger R.C. 4511.19's prohibition on operating a motor vehicle while intoxicated. *Gill* at 154.

{¶ 44} One can certainly question the logic of *Gill*: it is doubtful that anyone in common parlance would refer to someone sitting in a parked car with the engine off as operating the car. And the legislature ultimately responded. It enacted legislation that split what had previously been considered an OVI offense into two separate crimes. It created a statutory definition of operate for purposes of the OVI statute that defined the word to mean "to cause or have caused movement of a vehicle." Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2467, 2951, codified at R.C. 4511.01(HHH). At the same time, it created a separate offense, subject to a lesser punishment, of having physical control of a vehicle while under the influence. 149 Ohio Laws, Part II, at 3001. The physical-control offense prohibits an intoxicated person from possessing the car key while sitting in the driver's seat. R.C. 4511.194(A)(2) and (B).

18

**{¶ 45}** The legislature could have applied the new definition of operate to the operation-of-a-vehicle-under-an-OVI-suspension offense. But it chose not to do so. The new definition of operate applies only "[a]s used in [Chapters 4511] and * * * 4513 of the Revised Code," R.C. 4511.01—not to Chapter 4510, the chapter at issue here. Nevertheless, the lead opinion does what the legislature opted not to do—it applies this new definition to the operation-while-under-an-OVI-suspension offense.

**{¶ 46}** There are all kinds of problems with this approach. Most notably, it is inconsistent with the express intent of the General Assembly. We "presume that the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment." *Clark v. Scarpelli*, 91 Ohio St.3d 271, 278, 744 N.E.2d 719 (2001). Thus, not only was the General Assembly aware of the definition of operation set forth by this Court in *Gill* and *Cleary*, but it was also aware that the definition had been regularly applied to operating-while-under-suspension offenses. *See, e.g.*, *State v. Ewing*, 6th Dist. Erie No. E-94-39, 1995 Ohio App. LEXIS 1650, *6-8 (Apr. 21, 1995); *State v. Silva*, 12th Dist. Warren No. CA95-10-100, 1996 Ohio App. LEXIS 1811, *3-7 (May 6, 1996); *State v. Peters*, 2d Dist. Montgomery No. 20574, 2005-Ohio-3658, ¶ 33-34; *State v. Cochran*, 2d Dist. Montgomery No. 22240, 2008-Ohio-3612, ¶ 23-27; *Dayton v. Ahmad*, 2d Dist. Montgomery No. 24165, 2011-Ohio-2302, ¶ 56-59.

**{¶ 47}** Aware of this precedent, the General Assembly "made a considered judgment to retain the relevant statutory text" in Chapter 4510. *Texas Dept. of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 536, 135 S.Ct. 2507, 192 L.Ed.2d 514 (2015). A majority of this court may think that the General Assembly should have amended the operating-while-under-suspension statute, but that doesn't give it the power to do what the legislature opted not to do.

**{¶ 48}** The lead opinion nevertheless implicitly amends the language in R.C. 4511.01 setting forth the scope of the new definition of operate ("as used in this chapter and Chapter 4513") to include Chapter 4510. In the same vein, the opinion concurring in judgment only "would infer that the General Assembly intended the [new, statutory] definition of 'operate' to apply" to R.C. 4510.14. Opinion concurring in judgment only, ¶ 27. The express limitation on the reach of the new definition, as enacted, to Chapters 4511 and 4513 squarely contradicts that "infer[ence]." These Justices just don't believe the General Assembly meant what it plainly said. But if that's the case, the General Assembly could easily correct course. Rather than wait on the legislature, though, the lead opinion impatiently "rewrite[s] the statute in a manner that is pleasing to [it]" to correct perceived legislative "inadvertence or inattention," *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 40 (lead opinion).

**{¶ 49}** If it is ever permissible for us to rewrite a statute simply because we believe the legislature made a mistake, such a power is reserved for the rarest of the rare cases—ones in which it is indisputable that some technical error occurred in the drafting process. *See Sturges v. Crowninshield*, 17 U.S. 122, 202-203, 4 L.Ed. 529 (1819) (Marshall, C.J.) ("if, in any case, the plain meaning of a provision * * * is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application"); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 82, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (Scalia, J., dissenting) ("any 'scrivener's error' doctrine" requires "the meaning genuinely intended but inadequately expressed [to] be absolutely clear; otherwise we might be rewriting the statute rather than correcting a technical mistake"); Antonin Scalia & Bryan

20

Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012). This is not such a case.

{¶ 50} In addition to being inconsistent with the legislation enacted by the General Assembly, the court's action is contrary to principles of stare decisis. The statutory amendment was explicit that the new definition of operate applies only as the word is "used in [Chapter 4511] and in Chapter 4513." R.C. 4511.01. Until now, at least, the definition from *Cleary* and its progeny remained good law outside those two chapters. Today, the court effectively overrules these cases. In doing so, however, it does not take into account any of the traditional considerations that we apply in overruling established precedent. *See, e.g.*, *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 48; *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 40. The court simply decides that it will do what the legislature declined to do.

{¶ 51} This flips on its head the principle that precedent that "involves statutory interpretation" is owed greater stare decisis effect than other sources of law, because the legislature can always amend a statute in light of a court's construction. *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 6, 539 N.E.2d 103 (1989); *see also Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Here, the legislature had a prime opportunity to amend the statute but chose not to, even though it was amending other sections of the Revised Code. Yet the court refuses to give stare decisis effect to our precedent.

{¶ 52} The lead opinion strives mightily to get around the precedent problem posed by *Clearly* and *Gill*. Those cases, it announces, are not controlling because the court there interpreted the OVI statute "and this is not an OVI case." Lead opinion at ¶ 16. That distinction, however, is fanciful. There is no language in *Cleary* or *Gill* that limits their application to the OVI statute.

**{¶ 53}** Indeed, the crime of OVI consists of the following elements: (1) operating, (2) "any vehicle," (3) "within this state," (4) while "under the influence of alcohol" or drugs. R.C. 4511.19(A)(1). No one contested in *Cleary* or *Gill* that the defendants had been under the influence, occupying a vehicle, or within Ohio. The sole question in both cases was whether the defendant's conduct met the crime's operating-a-vehicle element. *See Cleary*, 22 Ohio St.3d at 199, 490 N.E.2d 574; *Gill*, 70 Ohio St.3d at 154, 637 N.E.2d 897. The law at issue today likewise criminalizes "operat[ing] any motor vehicle" in certain circumstances. R.C. 4510.14(A). The two crimes have different circumstantial elements: OVI requires intoxication whereas the suspension law requires a suspended license and adds an on-public-roads element. But on the issue before us, the OVI law and the suspension law are alike: the actus reus for both is operating a vehicle. The circumstantial difference between operating a car while under the influence versus operating one while under a license suspension does not change the meaning of operating a vehicle. That precedent is on point and, for purposes of Chapter 4510, has not been supplanted by the legislature.

### C. Precious Little

**{¶ 54}** The lead opinion's interpretation of the statute flies in the face of plain meaning. It is contrary to the intention of the legislature as demonstrated by its enactments. And it defies principles of stare decisis. So what does the lead opinion offer in support of its reading? Precious little.

**{¶ 55}** The lead opinion finds it "persuasive" that R.C. 4510.14 is titled "[d]riving under OVI suspension" and infers from this that operating simply means driving. Lead opinion at ¶ 14. It should know better. To start, Ohio law explicitly provides otherwise. The very first provision of the Revised Code states that statutes' titles "do not constitute any part of the law." R.C. 1.01. Thus, we have deemed statutes' titles "irrelevant to the substance of a code provision." *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991

(1994). And if that weren't enough, a review of the original version of R.C. 4510.14 enacted by the legislature in 2002 reveals that the original enactment did not contain any section titles at all. *See* Am.Sub.S.B. No. 123, 149 Ohio Laws, Part II, 2889; *see also United States v. Castro*, 837 F.2d 441, 442 (11th Cir.1988), fn. 1 (titles that were not part of a statute passed by the legislature, but rather were added "by those responsible for the codification of legislation," cannot be used to ascertain legislative intent). The lead opinion's reliance on the law's title underscores the weakness of its textual analysis.

{¶ 56} The lead opinion tries to hinge its result on public policy. It suggests that the broad definition of operate may criminalize innocent conduct, leading to "[un]just and [un]reasonable results." Lead opinion at ¶ 15. And certainly one can debate the pros and cons of a broad definition of operate. Is it fair to punish someone with an OVI license suspension for merely sleeping off their intoxication in a running car? On the other hand, shouldn't we be worried about someone with a history of driving drunk being one gear-shift away from endangering others?

{¶ 57} But those kinds of judgments are best left to the General Assembly, not to this court. Indeed, the history here demonstrates exactly why those kinds of public-policy considerations are reserved for the General Assembly. In enacting R.C. 4511.01(HHH), the legislature split the baby between the viewpoint that we ought not unnecessarily punish those who aren't actually driving and the viewpoint that those who are drunk ought not be in the driver's seat of a car. It did not let a person in physical control off without punishment, but rather provided a lesser penalty for that offense and a more severe penalty for those who actually drive while drunk. *See* R.C. 4511.19; R.C. 4511.194.

{¶ 58} This court, though, does not have the institutional competence to make such policy judgments. Nor do we have the capability to institute the kind of calibrated legislative response that the legislature enacted by separating the physical-control offense from the OVI offense. And this is precisely why we

should stick to our job and leave policymaking and legislating to the General Assembly.

### III. Conclusion

**{¶ 59}** Because Wilson operated her vehicle, I respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

───────────────

Andrew W. Garth, Cincinnati City Solicitor, William T. Horsley, Cincinnati City Prosecuting Attorney, and Jonathon Vogt and Meagan D. Woodall, Assistant Prosecuting Attorneys, for appellant.

Raymond T. Faller, Hamilton County Public Defender, and David Hoffmann, Assistant Public Defender, for appellee.

───────────────